518 S.E.2d 863

**In the Matter of GEORGE GLEN B., Jr.**

No. 26202.

Supreme Court of Appeals of West Virginia.

Submitted June 29, 1999.

Decided July 12, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Katherine M. Mason, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for West Virginia Department of Health and Human Resources.

William H. Judy, III, Esq., Judy & Judy, Moorefield, West Virginia, Attorney for George Glen B., Jr.

Marvin L. Downing, Esq., See & Downing, Moorefield, West Virginia, Attorney for George Glen B., Sr.

James Paul Geary, II, Esq., Patricia L. Kotchek, Esq., Geary and Geary, L.C., Petersburg, West Virginia, Attorneys for Waneta J.H.

WORKMAN, Justice:

This case is before the Court upon the appeal of the West Virginia Department of Health and Human Resources ("DHHR"), as well as the appeal[1] of the Guardian ad Litem on behalf of the infant, George Glen B., Jr.,[2] from the March 12, 1999, order entered by the Circuit Court of Grant County, West Virginia, returning physical and legal custody of the infant child to the Appellee mother, Waneta J.H. The Appellants argue that the lower court erred: 1) in ordering the return of physical and legal custody of the infant child to the Appellee mother, because statutory law mandates that the DHHR pursue termination of parental rights where the Appellee mother previously had parental rights terminated to a sibling of the infant child;[3] 2) in failing to set a preliminary hearing within the mandatory time frame of ten days as set forth in West Virginia Code § 49–6–3(a) (1998); 3) in making various factual findings;[4] and 4) in granting visitation to the Appellee mother,[5] because the DHHR is not

1. The Guardian ad Litem's brief is virtually identical to the brief submitted by the DHHR. Consequently, for purposes of this opinion, we refer to both appealing parties collectively as the Appellants.

2. Consistent with our practice in cases concerning juveniles, we use only the initial of the juvenile's last name. See Benjamin R. v. Orkin Exterminating Co., 182 W.Va. 615, 390 S.E.2d 814 n. 1 (1990) (citing In re Jonathan P., 182 W.Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989)); State v. Murray, 180 W.Va. 41, 44, 375 S.E.2d 405, 408 n. 1 (1988).

3. We note at the outset that in the petition brought by the DHHR, termination of the parental rights of the Appellee father was also sought. It is clear that the Appellee father did not have a prior involuntary termination, only a prior voluntary relinquishment of parental rights. Thus, there was no statutorily-mandated filing requirement with regard to the DHHR's seeking termination of the Appellee father's parental rights. See W.Va.Code § 49–6–5b(a)(3) (1998) and Section III(A) of this opinion infra. The lower court, on remand, however, should also clarify the status of the Appellee father's parental rights.

4. Because we are reversing the lower court's decision and remanding the case so that the petition can be reinstated and the necessary hearings can be held, we decline to address the alleged factual error raised by the DHHR.

5. The Appellants also contest the lower court's order, entered March 26, 1999. That order granted supervised visitation to the Appellee mother during the pendency of the sixty-day stay, which was also granted by the lower court pursuant to the DHHR's motion that the lower court stay its decision returning physical and legal custody of the infant child to the Appellee mother pending appeal. The lower court, in granting supervised visitation to the Appellee mother, directed that physical custody of the infant child remain with the DHHR for the period of the stay. Because the stay was for the sixty-day period beginning March 12, 1999, this Court, on May 11, 1999, continued the stay until June 15, 1999. In that order, this Court also ordered that visitation by the Appellee mother continue pursuant to the conditions outlined in the March 26, 1999, order. Based on our decision regarding the dismissal of the action, and because the visitation was only for the limited period of the stay, we need not address the visitation issue.

required to make reasonable efforts to preserve the family unit in this case.[6] Based upon a review of the record, the parties' respective briefs and all other matters submitted before this Court, we reverse the lower court's decision and remand this case for further proceedings consistent with this opinion.

## I. FACTS

George Glen B., Jr., was born on January 20, 1999, at Grant Memorial Hospital in Petersburg, West Virginia. George is the second child born to Waneta J.H. and George Glen B.,[7] both of whom reside in Dorcas, Grant County, West Virginia. George Glen B., Jr., is the Appellee mother's third child.

On January 20, 1999, the DHHR filed a petition requesting emergency and extended custody of the infant child, as well as seeking termination of the parental rights of the Appellee mother and the Appellee father. The petition was based upon two prior cases of abuse and neglect against the Appellee mother[8] which had been brought in Hardy County and which resulted in an involuntary termination of parental rights in one case[9] and a voluntary relinquishment of both of the Appellees' parental rights in the other case.[10]

---

**6.** The DHHR relies upon West Virginia Code § 49–6–5(a)(7)(C) (1998) and § 49–6–3(d)(3) (1998) as support for this position. West Virginia Code § 49–6–5(a)(7) provides:

> (7) For purposes of the court's consideration of the disposition custody of a child pursuant to the provisions of this subsection the department is not required to make reasonable efforts to preserve the family if the court determines:
> (A) The parent has subjected the child to aggravated circumstances which include, but are not limited to, abandonment, torture, chronic abuse and sexual abuse;
> (B) The parent has:
> (i) Committed murder of another child of the parent;
> (ii) Committed voluntary manslaughter of another child of the parent;
> (iii) Attempted or conspired to commit such a murder or voluntary manslaughter or been an accessory before or after the fact to either such crime; or
> (iv) Committed a felonious assault that results in serious bodily injury to the child or to another child of the parent;
> (C) The parental rights of the parent to a sibling have been terminated involuntarily.

*Id.* Similarly, West Virginia Code § 49–6–3(d) is virtually identical to the provisions of West Virginia Code § 49–6–5(a)(7)(C), but governs the circuit court's consideration of temporary custody. West Virginia Code § 49–6–3(d)(3), in relevant part, provides that for the purposes of the trial court's consideration of temporary custody, the DHHR need not make reasonable efforts to preserve family unit where the court determines that prior involuntary termination of parental rights to sibling has occurred. *Id.*

**7.** The Appellee mother and the Appellee father have married since the institution of this action.

**8.** Only one of these prior cases actually involved the Appellee father, George Glen B. The Appellee mother's first child, Daisy, was fathered by another individual who is not a party to this action.

**9.** On September 18, 1995, the Circuit Court of Hardy County terminated the parental rights of the Appellee mother and father with regard to the infant child, Daisy, after almost a year of services and proceedings before the lower court. The circuit court found that the parents had "demonstrated inadequate capacities to solve problems of abuse and neglect on their own or with assistance; and ... incurred mental deficiency of such duration and nature as to render them incapable of exercising proper parenting skills or sufficiently improving the adequacy of such skills." The DHHR initially took custody of Daisy when she was eleven weeks old. While the record in the instant case is devoid of the grounds behind the abuse and neglect petition regarding Daisy, the DHHR's petition for appeal indicates that

> [s]ome of the Respondent's conduct resulting in the imminent danger petition included the mother yelling and screaming at the child because she had vomited, picking the child up by her clothing, leaving her unattended on a dryer, table and the floor, grabbing her by the arms and smacking her on the legs.

**10.** The DHHR took custody of the Appellees' infant child, Monica, when that child was only ten days old. The child was born on January 16, 1997. Again, the record in the instant case is devoid as to what abuse and neglect allegations necessitated the DHHR's intervention regarding Monica. The DHHR's petition of appeal provides that

> the Department took emergency custody of the child based in part on the involuntary termination of the mother's parental rights to Daisy.... The petition alleged that the Respondent mother became intoxicated and involved in an altercation with her own mother and her mother's boyfriend which put the child in physical danger and left them without a place to live, that the Respondent yelled and swore at the child for crying because she needed to be fed and changed, that the Respondent

The DHHR removed the child from the Appellee mother's custody on January 22, 1999. The infant child was placed in a foster home with the other children of the Appellee mother, who are George Glen B., Jr.'s full and half siblings.

On January 25, 1999, the circuit court conducted a hearing to consider the merit of the DHHR's taking emergency custody of the infant child. By order dated January 28, 1999, the circuit court stated that custody of the infant child was to remain with the DHHR, "[p]ending the Court's decision," and "[t]hat the Court . . . [would] render a decision . . . within the next forty-eight hours." Even though the Court stated at the hearing on January 25, 1999, that "[w]e need to have a preliminary hearing in ten days . . .[,]" no other hearing regarding the petition filed by DHHR occurred until March 11, 1999.

At the March 11, 1999, hearing, Mr. Dennis V. Di Benedetto, the Prosecuting Attorney for Grant County and the DHHR's attorney in this matter, informed the lower court that it had never set a preliminary hearing date, and, thus far, the only evidence which had been presented in the case was in support of the emergency taking. Mr. Di Benedetto further told the court that the DHHR had not "present[ed] any extensive evidence of a preliminary hearing nature."

By order entered March 12, 1999, the circuit court made specific findings that there had been two prior cases involving abuse and neglect allegations brought by the DHHR against the Appellee mother in the first instance and both the Appellees in the second instance. The circuit court also found that "[i]n both previous cases, neither parent was capable of minimum acceptable parenting skills." The circuit court further found, however, that "[t]he fact that the Respondent,

Waneta J. W[ ][.] H[ ][.], has had her parental rights terminated to two previous children, and the father George Glen B[ ][.] Sr., has had his rights terminated to one previous child, is not sufficient evidence, absent no showing of abuse or neglect to George Glen B[ ][.] Jr., the current child." The court also found that the prior termination was not sufficient to terminate parental rights. Finally, the court found "no evidence of abuse or neglect of the infant child, George Glen B[ ][.] Jr., by the mother, . . . or the biological father, . . . as the child was removed from the hospital after birth." Based upon these findings, the lower court ordered legal and physical custody of the infant child be returned to the Appellee mother [11] and then dismissed the action court's docket.

## II. STANDARD OF REVIEW

 The standard of review used by this Court when reviewing circuit court rulings in abuse and neglect cases is as follows:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

moved the child to a place where living conditions were deplorable, that the Respondent's mother threatened to leave the county with the child, and, that the Respondent, in the opinion of a medical professional, did not possess the mental capability to properly care for Monica. That proceeding resulted in both of the Appellees voluntarily relinquishing their respective parental rights to the child. The Appellee father, however, was granted a three-month preadjudicatory improvement period on or about the time of his preliminary hearing. Further, parenting services

were also put into place for the Appellee father, including anger control counseling. The Appellee father, nevertheless, ultimately voluntarily relinquished his parental rights, when the infant child was eight months old. Further, the DHHR notes that termination of parental rights appeared to be impending with regard to both parents prior to their voluntary relinquishments of custody to the DHHR.

11. The Court made no reference to the custodial rights of the Appellee father.

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996). It is with the above-mentioned standard of review in mind, that we now review the circuit court's order. Because our decision turns on the legal conclusions made by the circuit court, our review is de novo. *See id.*

## III. ISSUES

The crucial issue we address is whether the circuit court erred in returning the infant child to the Appellee mother and in dismissing the action, without first permitting an exposition of the evidence to determine whether this was the proper action. The DHHR argues that because the Appellee mother's parental rights to a sibling have previously been terminated, statutory law mandates that the DHHR undertake efforts to terminate the Appellee mother's parental rights to the newest child, in this case George Glen B., Jr. *See* W.Va.Code § 49–6–5b (1998). Moreover, the lower court's failure to conduct a preliminary hearing pursuant to the statutorily-mandated [12] time frame of ten days denied the DHHR, as well as the Appellees, the opportunity to submit before the lower court evidence supportive of the

parties' respective positions. The Appellees maintain that it is constitutionally impermissible to apply a presumption that the prior involuntary termination of the mother's parental rights to another child or the prior voluntary relinquishment of both parents' rights to another child proves imminent danger to the child, proves abuse or neglect of the child, or requires termination of the parental rights of the parents to the child.[13] The Appellees further maintain that the DHHR did not show the existence of imminent danger to the physical well-being of George Glen B., Jr., and the request for emergency and extended custody of this child was properly dismissed. Finally, the Appellees assert that the DHHR did not show abuse or neglect as required by statute in order to seek termination of parental rights as a dispositional alternative for this child and the request for termination of parental rights was properly dismissed.

## A. DISMISSAL OF PETITION

 It is axiomatic that West Virginia Code § 49–6–5b(a)(3) compels the DHHR to file a petition seeking termination of parental rights where, as in the instant matter, parental rights involving a sibling have previously been involuntarily terminated. West Virginia Code § 49–6–5b(a)(3) provides, in rele-

---

12. *See* W.Va.Code § 49–6–3(a) and W.Va. R.P. Child Abuse & Neglect Pro. 22.

13. The Appellees assert a constitutional attack on the validity of the West Virginia Code § 49–6–5b(a)(3) for the first time on appeal. The Appellees never objected or brought to the lower court's attention any argument concerning the constitutional validity of the relevant statute. Because we are ordering further proceedings in this matter, we decline to address this argument at this time. *See Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 93, 246 S.E.2d 624, 628 (1978) ("The almost universal rule is that an appellate court need not consider grounds of [an] objection not presented to the trial court."). Finally, we note that the DHHR has never argued that the pertinent statutory provision mandating that the petition be filed relieves the DHHR of its burden of proving the abuse and neglect averments contained within the petition by "clear and convincing" evidence. W.Va.Code § 49–6–2(c) (1998). The DHHR does argue that this Court has upheld termination of parental rights without the need for reunification services or

other less restrictive alternatives when it is found that there is no reasonable likelihood under West Virginia Code § 49–6–5(b) that the conditions of abuse and neglect can be substantially corrected based upon the evidence before the court that the abusing adults have demonstrated an inadequate capacity to solve the problems of abuse and neglect with or without help. *See* Syl. Pt. 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980) ("Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under *W.Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected."); *see also In re Danielle T.*, 195 W.Va. 530, 466 S.E.2d 189 (1995); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). The DHHR, however, further argues that "[t]he lack of the preliminary hearing in this action deprived the Department of its ability to place complete evidence on the record regarding the danger to George Jr.'s health, safety, and welfare based upon the parents' past behavior."

vant part, that "[e]xcept as provided in subsection (b) of this section,[14] the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: ... (3) ... [where] the parental rights of the parent to a sibling have been terminated involuntarily."[15] *Id.* Quite clearly, the statute contemplates that a prior termination of parental rights to a sibling is, at least, some evidence of a child being threatened with abuse and neglect. The legislature has clearly determined that where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49–6–1 to –12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced

the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49–6–5b(a) is present.

■ Moreover, this Court previously addressed the importance of prior acts of violence, physical abuse, and/or emotional abuse in the context of abuse and neglect proceedings in held in *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). In syllabus point eight of *Carlita B.*, we held that "[p]rior acts of violence, physical abuse, or emotional abuse toward other children are relevant in a termination of parental rights proceeding, are not violative of W.Va.R.Evid. 404(b), and a decision regarding the admissibility thereof shall be within the sound discretion of the trial court."[16] 185 W.Va. at 616, 408 S.E.2d at 368.

■ Therefore, we hold that when an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § 49–6–5b(a)(3), prior

14. West Virginia Code § 49–6–5b(a) dictates when efforts to terminate parental rights are required by the DHHR. Subsection (b) of that statute sets forth the following three exceptions to the mandatory requirement that the DHHR seek termination in certain instances:

(b) The department may determine not to file a petition to terminate parental rights when:

(1) At the option of the department, the child has been placed with a relative;

(2) The department has documented in the case plan made available for court review a compelling reason, including, but not limited to, the child's age and preference regarding termination or the child's placement in custody of the department based on any proceedings initiated under article five [§ 49–5–1 et seq.] [concerning juvenile proceedings] of this chapter, that filing the petition would not be in the best interests of the child; or

(3) The department has not provided, when reasonable efforts to return a child to the family are required, the services to the child's family as the department deems necessary for the safe return of the child to the home.

W.Va.Code § 49–6–5b(b). When an exception exists, however, only the mandatory filing requirement of an abuse and neglect petition is eliminated as the DHHR still retains the discretion to file an abuse and neglect petition. *Id.* None of the exceptions apply to the instant case.

15. The other instances wherein the DHHR is required to seek termination of parental rights are as follows:

(1) If a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home;

(2) If a court has determined the child is abandoned; or

(3) If a court has determined the parent has committed murder or voluntary manslaughter of another of his or children; has attempted or conspired to commit such murder or voluntary manslaughter or has been an accessory before or after the fact of either crime; has committed unlawful or malicious wounding resulting in serious bodily injury to the child or to another of his or children....

*Id.*

16. *See* W. Va.Code § 49–6–3(a) (providing that "[i]n a case where there is more than one child in the home, or in the temporary care, custody or control of the alleged offending parent, the petition shall so state, and notwithstanding the fact that the allegations of abuse or neglect may pertain to less than all of such children, each child in the home for whom relief is sought shall be made a party to the proceeding. Even though the acts of abuse or neglect alleged in the petition were not directed against a specific child who is named in the petition, the court shall order the removal of such child, pending final disposition, if it finds that there exists imminent danger to the physical well-being of the child and a lack of reasonable available alternatives to removal"); *see also supra* n. 6.

to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s). Where an abuse and neglect petition is filed based on prior involuntary termination(s) of parental rights to a sibling, if such prior involuntary termination(s) involved neglect or non-aggravated abuse, the parent(s) may meet the statutory standard for receiving an improvement period with appropriate conditions,[17] and the court may direct the DHHR to make reasonable efforts to reunify the parent(s) and child. Under these circumstances, the court should give due consideration to the types of remedial measures in which the parent(s) participated or are currently participating and whether the circumstances leading to the prior involuntary termination(s) have been remedied. Where there was aggravated abuse, however, such as the murder or serious injury of a sibling, the court may be justified in ordering termination without the use of intervening less restrictive alternatives. *See* Syl. Pt. 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

In the instant case, the lower court erred in dismissing the abuse and neglect petition outright, without first allowing the development of evidence regarding the prior terminations at issue and whether the parents had taken steps to remedy the circumstances which caused their ability to parent to be so deficient as to have had their rights to prior children permanently terminated.

## B. FAILURE TO CONDUCT HEARINGS

■ Prior to the order returning custody to the Appellee mother, which in effect made a disposition of the case pursuant to West Virginia Code § 49–6–5 (1998), the lower court not only failed to conduct the mandated[18] preliminary hearing[19] set forth in Rule 22 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings[20] and West Virginia Code § 49–6–3(a),[21] but also failed to conduct an adjudicatory hearing as set forth in Rule 25 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings[22] and West Virginia Code § 49–6–2 (1998).[23]

17. *See* W.Va. Code § 49–6–12 (1998) (regarding improvement periods in cases of child neglect or abuse).

18. The Appellees argue that the DHHR failed to comply with the minimum five days actual notice requirement prior to the January 25, 1999, hearing. *See* W.Va. R.P. Child Abuse & Neglect Pro. 20. Rule 20 provides for actual notice of "at least five (5) days" prior to the preliminary hearing. *Id.* The January 25, 1999, hearing, however, was not the preliminary hearing in this case. Rather, that hearing was conducted in accordance with West Virginia Code § 49–6–3(c), so that the circuit court could enter an order confirming the emergency custody decision made by the magistrate and entered on January 22, 1999.

19. Contrary to the Appellees' position, the lower court did initially make the determination that the DHHR was justified in taking emergency custody of the infant child. This is evinced by the lower court's January 28, 1999, order directing that custody of the infant child remain with the DHHR. It was this decision which triggered other statutorily-mandated hearings and timeframes.

20. Rule 22 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in pertinent part, that "[i]f at the time the petition was filed, the court placed or continued the child in the emergency custody of the

Department . . ., a preliminary hearing on emergency custody shall be initiated within ten (10) days after the continuation or transfer of custody is ordered as required by W.Va.Code § 49–6–3(a)." W.Va. R.P. Child Abuse & Neglect Pro. 22.

21. West Virginia Code § 49–6–3(a) provides, in pertinent part, that "[u]pon the filing of a petition, the court may order that the child alleged to be an abused or neglected child be delivered for not more than ten days into the custody of the state department . . . pending a preliminary hearing. . . ." *Id.*

22. Rule 25 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings provides, in pertinent part, that

[w]hen a child is placed in the temporary custody of the Department . . . pursuant to W. Va.Code § 49–6–3(a), the final adjudicatory hearing shall commence within thirty (30) days of temporary custody order entered following the preliminary hearing and must be given priority on the docket unless a preadjudicatory improvement period has been ordered. . . .

W.Va. R.P. Child Abuse & Neglect Pro. 25.

23. West Virginia Code § 49–6–2(c) provides:

In any proceeding pursuant to the provisions of this article, the party or parties having cus-

In syllabus point one of *State v. T.C.,* 172 W.Va. 47, 303 S.E.2d 685 (1983), this Court held that

> [i]n a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code, 49–6–5, it must hold a hearing under W.Va.Code, 49–6–2, and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case.

172 W.Va. at 48, 303 S.E.2d at 686.

It is clear from the minuscule record in this case that the lower court's consideration of the abuse and neglect proceeding was inadequate. Mandated hearings did not occur, evidence was not taken, yet a determination to dismiss the petition and return custody to the Appellee mother was made. Thus, the lower court's action in this case was not in compliance with pertinent statutes, rules, and case law. As this Court has previously stated on numerous occasions:

> The clear import of the statute [West Virginia Code § 49–6–2(d) ] is that matters involving the abuse and neglect of children shall take precedence over almost every other matter with which a court deals on a daily basis, and it clearly reflects the goal that such proceedings must be resolved as expeditiously as possible.

Syl. Pt. 5, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991). Subsequent to the initial hearing in this case, almost two months passed before another hearing occurred, and even that hearing was not the preliminary hearing. According to the statute and the rule, a preliminary hearing should have occurred within ten days from the January 25, 1999, hearing. *See* W.Va. Code § 49–6–3(a) and W.Va. R.P. Child Abuse & Neglect Pro. 22. The parties to an abuse and neglect proceeding must be given a meaningful opportunity to introduce substantive evidence in support of their respective positions, before a circuit court makes its final dispositional decision, and the guiding force behind such decision must be what was in the best interests of the child. *See Michael K.T. v. Tina L.T.,* 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children.").

## IV. CONCLUSION

Accordingly, based on the foregoing, we conclude that the lower court erred not only in dismissing the abuse and neglect petition and returning custody outright to the Appellee mother, but also in failing to conduct mandated hearings. We, therefore, reverse and remand this case to the circuit court. We direct the circuit court to reinstate the abuse and neglect petition. We further order the lower court to conduct a preliminary hearing within ten days of receipt of this opinion. All other necessary hearings shall also be conducted on an expedited basis and should provide a meaningful opportunity to the parties to produce evidence of the circumstances involved in the instant case. After hearing the pertinent evidence, the court should make specific findings of fact relating to the prior terminations and the current parenting abilities of the mother and father. Even if the court determines, upon appropriate motion, to grant an improvement period with appropriate conditions, concurrent planning[24] should begin for the child's permanent

---

todial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. The petition shall not be taken as confessed. . . . At the conclusion of the hearing the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . .
*Id.*

**24.** Rule 28 of the Rules of Procedure for Child Abuse and Neglect Proceedings requires the DHHR to prepare the child's case plan. The following information should comprise a part of that case plan:

> (c) When the Department's recommendation includes placement of the child away from home, whether temporarily or permanently, the report also shall include:
> (1) An explanation why the child cannot be protected from the identified problems in the home even with the provision of service or why placement in the home is not in the best interest of the child;

placement in the event that efforts at reunification fail. Finally, any decision rendered by the lower court should encompass the parental rights of both the Appellee mother and the Appellee father.

Reversed and remanded with directions.

(2) Identification of relatives or friends who were contacted about providing a suitable and safe permanent placement for the child;

(3) A description of the recommended placement or type of home or institutional placement in which the child is to be placed, including its distance from the child's home and whether or not it is the least restrictive (most family-like) one available and including a discussion of the appropriateness of the placement and how the agency which is responsible for the child plans to assure that the child receives proper care and that services are provided to the parents, child and foster parents in order to improve the conditions in the parent's(s')/respondent's(s') home, facilitate return of the child to his or her own home, or the permanent placement of the child;

(4) A suggested visitation plan including an explanation of any conditions be placed on the visits;

(5) A statement of the child's special needs and the ways they should be met while in placement;

(6) The location of any siblings and, if siblings are separated, a statement of the reasons for the separation and the steps required to unite them as quickly as possible and to maintain regular contact during the separation if it is in the child's best interest. . . .

W.Va. R.P. Abuse & Neglect Pro. 28(c). *See In re Micah Alyn R.*, 202 W.Va. 400, 409, 504 S.E.2d 635, 644 (1998) (Workman, J., concurring) ("concurrent planning for permanency should occur even where parental rights are not terminated. This should be the practice in all abuse and neglect cases, so that there is a permanency plan for children where family reconciliation efforts are not successful for whatever reason").