# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**In Re: I.H.**

**No. 14-0694** (Marion County 13-JA-63)

**FILED**

November 24, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, by counsel Rebecca L. Tate, appeals the Circuit Court of Marion County's June 24, 2014, order terminating her parental rights to one-year-old I.H ("the child"). The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee A. Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Heidi M. Georgi Sturm, filed a response on behalf of the child that also supports the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating her parental rights without first granting her an improvement period and without the evidentiary support required by law for termination.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In approximately April of 2011, petitioner's parental rights to three of her older children were terminated in the State of Arizona due to severe neglect, domestic violence, and sexual abuse by the children's father. Petitioner subsequently lost parental rights to a fourth child[1] in the State of Ohio based upon the prior Arizona terminations. According to evidence presented in this proceeding, petitioner received parental improvement services in both Arizona and Ohio.

Petitioner gave birth to her seventh child, I.H., in August of 2013, in Monongalia County, West Virginia. The child was born with significant medical concerns, including being underweight, lacking the ability to properly suck or swallow, and requiring specialized feeding. The child spent more than a month in the NICU at Ruby Memorial Hospital in Morgantown, West Virginia.

In late August of 2013, the West Virginia DHHR filed an abuse and neglect petition against petitioner and the child's father on the basis of her prior terminations. Petitioner waived

---

[1]According to the limited record on appeal, petitioner has seven children. Only I.H. lives in West Virginia. Petitioner claimed below, without further evidence, that she maintains her parental rights to two of her six out-of-state children, but she did not have custody of those six children at the time of the filing of the current proceedings or anytime thereafter.

her preliminary hearing, and at the October 7, 2013, adjudicatory hearing, petitioner stipulated to neglect based upon her prior substance abuse that led, in part, to her prior terminations. Petitioner did not acknowledge any prior sexual abuse of her children or other conditions of neglect. The circuit court accepted the stipulation and adjudicated the child as neglected by petitioner. Petitioner then moved for a post-adjudicatory improvement period. The circuit court denied that motion and set the matter for disposition. Petitioner was provided supervised visitations with the child.

In November of 2013, at a scheduled supervised visit, petitioner had limited interest in holding her child, and petitioner attempted to give the child a bottle filled with "steaming water," which was too hot for the child to consume. At that visit, petitioner was reported to have held or laid down the child incorrectly following a feeding, despite tutorials by her service provider on the proper method to do so. As a result, the child had a seizure-like episode. The child was immediately rushed to the hospital. At a Multi-Disciplinary Team ("MDT") meeting in December of 2013, the MDT members discussed the feeding episode with petitioner, and she became disruptive and threatening towards the MDT members. Police had to be contacted due to her behavior.

On April 9, 2014, the circuit court held the dispositional hearing. The foster mother, petitioner's service provider, the Child Protective Services ("CPS") worker, and Dr. Bradley Mitchell, the child's pediatrician, testified consistently that the child had significant medical concerns that required specialized care. The foster mother, the service provider, and the CPS worker further testified that petitioner could not properly handle those specialized needs. Petitioner had ample services in Arizona and Ohio, but petitioner lacked the ability to properly care for the child. The service provider also testified that she attempted to provide petitioner parenting classes, although not court-ordered to do so, but following the feeding incident, the service provider no longer felt that petitioner could appropriately parent the child. Moreover, following the MDT meeting outburst, the service provider no longer felt safe around petitioner. Dr. Bradley Mitchell, the child's pediatrician, testified as to the child's health concerns. The circuit court granted petitioner's motion to continue the dispositional hearing.

On May 16, 2014, at the final dispositional hearing, petitioner testified as follows: She was once a methamphetamine abuser, but she had been sober since 2010. She attended therapy for her drug addiction, and had recently started mental health therapy, including instruction for anger management. She could learn through services to cope with her child's health concerns. She explained that she got "loud" and said "choice words" when the MDT members discussed suspending visitation, but she apologized to the MDT members for the outburst. She was also no longer in a relationship with the children's father, but her new boyfriend did have a criminal and CPS history. She acknowledged that her prior terminations alleged sexual abuse of her children, but she denied those allegations. Following petitioner's testimony, the circuit court found that petitioner had been offered a wide range of services previously in other states, and the child's welfare and best interests necessitated termination without further time for parental improvement. The circuit court terminated her parental rights. This appeal followed.

This Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights for two reasons. First, petitioner argues that she was denied an improvement period. Petitioner asserts that the DHHR did not offer her any services during these proceedings, apart from supervised visitation with the child that ended following the November of 2013 feeding incident. Upon our review of the record, we find no error in this regard. Pursuant to West Virginia Code § 49–6–5(a)(7)(C), the DHHR is not required to make reasonable efforts to preserve the family if the circuit court determines that the parent's parental rights to another child have been terminated involuntarily. Nevertheless, our review indicates that, in the instant case, petitioner received supervised visitation services and parenting instruction, albeit informal, by a DHHR service provider. The supervised visits resulted in the child being rushed to the hospital for medical care after a seizure-like episode due to petitioner's actions and the service provider testifying that petitioner was not appropriate to parent this child. Furthermore, the CPS worker testified that petitioner had received many services over the course of approximately eight years during her previous abuse and neglect proceedings in Arizona and Ohio but to no avail. Petitioner also lashed out at the entire MDT panel resulting in police involvement. Pursuant to West Virginia Code § 49-6-12, a parent moving for an improvement period bears the burden of proving by clear and convincing evidence that he or she will substantially comply with an improvement period; consequently, the circuit court has the discretion to deny an improvement period if it finds that this burden has not been met. Given petitioner's parenting history, the services rendered to her in these and other proceedings over the course of approximately eight years, and her behavior during the pendency of this case, the circuit court did not abuse its discretion in this regard.

Second, petitioner argues that the DHHR failed to meet the necessary burden of proof to terminate her parental rights in this case. Petitioner asserts that the DHHR did not establish that she failed to develop or follow through on a family case plan. Therefore, petitioner claims that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse or neglect. Our review of the record reveals no error by the circuit court in this regard. We have held as follows:

> Where there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code §§ 49-6-1 to -12 (1998). Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code § 49-6-5b(a) (1998) is present.

Syl. Pt. 2, *In re George Glen B. Jr.*, 205 W.Va. 435, 518 S.E.2d 863 (1999). As discussed above, the evidence clearly established that petitioner failed to remedy the circumstances that led, in part, to her prior terminations. Petitioner had undergone parental improvement services in three states over the course of approximately eight years. She failed to appreciate the sexual abuse perpetrated upon her older children by their father, which was evidenced by petitioner's continued relationship with him during the course of these proceedings. By her own admission, even when she ended the relationship with the children's father, she developed a relationship with an inappropriate individual who had a history of criminal and abuse and neglect allegations. She failed to meet her child's needs during the pendency of this case, which was illustrated most notably by her child requiring hospitalization after petitioner fed and handled her. Petitioner also demonstrated significant anger issues with the MDT panel. The evidence in the record, when viewed in its entirety, was sufficient to support the circuit court's conclusion that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED**: November 24, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

4