# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **C.R.**

**No. 19-0797** (Kanawha County 18-JA-216)

**FILED**

**April 6, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.R., by counsel Rebecca Stollar Johnson, appeals the Circuit Court of Kanawha County's July 30, 2019, order terminating her parental rights to C.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Elizabeth G. Kavitz, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2018, the DHHR filed a child abuse and neglect petition alleging that petitioner's parental rights to her older children were previously terminated on the basis of substance abuse, failure to provide for the children, and failure to participate in services. The DHHR further alleged that she failed to remedy those conditions. The DHHR alleged that petitioner attempted to evade West Virginia Child Protective Service workers by traveling to Tennessee to give birth to C.R. The DHHR also alleged that the father called the authorities disclosing that petitioner was "losing her mind" and hiding in the woods with the three-month-old child. According to the DHHR, the child was caked in mud when found and a hair was wrapped

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

so tightly around one of the child's toes that she required medical intervention.[2] Petitioner waived her right to a preliminary hearing and was ordered to participate in random drug screening.

On October 2, 2018, the circuit court held the adjudicatory hearing. The DHHR presented testimony from petitioner's case worker that petitioner attempted to evade the DHHR by giving birth to her child out of state. The DHHR worker explained that petitioner's prior termination of parental rights was based on substance abuse and failure to protect her children. The worker testified that, based on petitioner's extreme lengths to avoid the DHHR in this case, the worker did not believe the circumstances giving rise to the prior termination had changed. However, she admitted that petitioner had submitted to drug screening during this proceeding and provided consistently negative drug screens.

Petitioner testified and denied the allegations that the child was caked in mud when removed by the DHHR. Petitioner further testified that she had made significant changes since the prior case. According to petitioner, she was attending therapy, was now substance free, and maintained appropriate housing with the father. Petitioner admitted, however, that she was "screaming and fighting" with the father the night that the child was removed, but asserted there was no physical violence that night. Petitioner also admitted that, after the DHHR removed C.R. from her care, she "kind of went a little crazy" and was arrested for destruction of property after "beating up . . . BMWs" in the Charleston Town Center Mall. As a result, petitioner was incarcerated for "about two weeks."

Following the presentation of evidence, the DHHR moved for the circuit court to adjudicate petitioner as an abusing parent and to accelerate disposition and terminate her parental rights that day. Ultimately, the circuit court granted the DHHR's motion. The circuit court found that petitioner had not remedied the conditions that led to the prior termination of her parental rights. Further, the circuit court found that the best interests of C.R. required termination of petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its October 18, 2018, order. Petitioner did not appeal that order.[3]

In July of 2019, the circuit court held a properly noticed dispositional hearing, wherein it vacated the October 18, 2018, dispositional order as it related to petitioner's parental rights. Petitioner did not appear, but was represented by counsel. A DHHR worker testified that petitioner was noncompliant with services in her prior abuse and neglect proceeding and, as a result, was unable to address her substance abuse. The worker testified that, after petitioner's parental rights were terminated in the prior case, she continued to associate with the father and was caught in his home with the children. Due to her continued association, the father's parental rights were

---

[2]The DHHR amended the petition in July of 2018 to include the father as a respondent. The DHHR alleged that father's parental rights to other children were previously involuntarily terminated and that his circumstances since that termination were unchanged.

[3]The father appealed the circuit court's October 18, 2018 order. Upon review, this Court found that the circuit court erred in holding an accelerated dispositional hearing and vacated the court's dispositional order and remanded the case with regard to the father's parental rights. *See In re C.R.*, No. 18-1011, 2019 WL 1766175 (W. Va. April 19, 2019)(memorandum decision).

ultimately terminated and the children's permanency was jeopardized. Since the filing of the current petition, the worker explained that petitioner continued to jeopardize the children's permanency and abuse controlled substances. In April of 2019, one of petitioner's children provided the worker with a "video footage of [petitioner acting] . . . belligerently high" in the living room of the child's relative foster placement. The DHHR worker also testified that, on another occasion in May of 2019, one of petitioner's children called her from the same relative foster placement "crying his eyes out and screaming." In the background of this phone call, the DHHR worker could hear petitioner and the father "yelling" and heard the father tell the child to "hang up the phone."[4] Based on these events, the worker believed that petitioner's circumstances had not changed from the prior proceeding in which her parental rights were terminated. Accordingly, she recommended termination of petitioner's parental rights to C.R. Petitioner presented no evidence, but moved the circuit court to order her to participate in thirty days of drug screening.

Ultimately, the circuit court denied petitioner's motion and terminated her parental rights. The circuit court found that petitioner continued to engage in domestic violence with the father and exhibited an on-going drug problem. As a result, the court found that petitioner had not remedied the conditions that led to her prior termination of parental rights. The court concluded that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected and that termination was in the child's best interests. The circuit court memorialized its decision in its July 30, 2019, order. Petitioner now appeals that order.[5]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

---

[4]As a result of petitioner's consistent interference in her children's relative foster placement, the children were necessarily moved and struggled to find permanent placement.

[5]The father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in her current foster placement.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights because she proved that the conditions surrounding the prior termination of her parental rights had been remedied. In support, petitioner references the negative drug screens she submitted during the proceedings as clear evidence that her substance abuse had been remedied. Petitioner asserts that the circuit court should have provided her an opportunity to further show that she remedied the conditions through services. We find petitioner's argument to be without merit.

West Virginia Code § 49-4-604(b)(6) provides that a circuit court may terminate a parent's parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. A court may find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." W. Va. Code § 49-4-604(c)(3). We have acknowledged that "the legislature has reduced the minimum threshold of evidence necessary for termination [of parental rights] where one of the factors outlined in [W. Va. Code § 49-4-605] is present," such as the termination of parental rights to the sibling of a child named in the petition. Syl. Pt. 2, in part, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). However, "prior to the [circuit] court's . . . disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s)." *Id.* at 437, 518 S.E.2d at 865, syl. pt. 4, in part.

We find that petitioner's argument on appeal ignores substantial negative evidence introduced at the adjudicatory and dispositional hearings that the conditions related to her prior termination of parental rights were ongoing. Testimony produced at the adjudicatory hearing showed that petitioner continued to associate with the father and that they engaged in domestic quarrels that required law enforcement intervention. Although petitioner insisted she achieved mental stability, she admitted that she "kind of went a little crazy" and destroyed property in a public place, which lead to her incarceration. Likewise, petitioner's assertions that she remained substance free were proven false at the dispositional hearing. Video evidence showed that petitioner was "belligerently high" in the presence of her child in April of 2019. Critically, petitioner was offered an array of services in her prior abuse and neglect proceeding, but failed to fully participate in those services. "[T]he [circuit] court should give due consideration to the types of remedial measures in which the parent(s) participated or are currently participating and whether the circumstances leading to the prior involuntary termination(s) have been remedied." *Id.*, syl. pt. 5, in part. It appears from the record that any services petitioner was offered or participated in had no remedial effect and that the conditions of the prior termination continued unabated. Contrary to petitioner's argument on appeal, the circuit court provided her a sufficient opportunity to show that she remedied the conditions which led to her prior termination, but the DHHR proved that her current situation was relatively unchanged. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the welfare of C.R., and those findings are supported by the above-referenced evidence. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 30, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison