# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **I.E.-S.**

**No. 25-237** (Berkeley County CC-02-2024-JA-16)

## MEMORANDUM DECISION

Petitioner J.E.-S.[1] appeals the Circuit Court of Berkeley County's March 11, 2025, order terminating her parental, custodial, and guardianship rights to the child, arguing that the court erred by shifting the evidentiary burden, adjudicating her, and terminating her rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In January 2024, the DHS filed a petition alleging that the petitioner recently gave birth to the child, I.E.-S., and that her parental rights to another child were previously involuntarily terminated for her failure to protect that child from others, behavioral and mental health concerns, and lack of housing. The DHS further alleged that the petitioner had not bonded with the child and was incapable of providing care to the child, despite prompting from hospital staff. The DHS indicated that the petitioner was counseled twice by staff to keep the child's protective phototherapy eye mask from slipping over his nose and mouth, as it caused a suffocation risk. However, a nurse found the child with the eye mask over his mouth and nose, while the petitioner slept unaware. In addition, the DHS alleged that the petitioner was uninterested in caring for the child, as a nurse brought the petitioner a bottle to feed the child and she instead left the room and then took a phone call while the nurse fed, changed, and swaddled the child. The nurse repeatedly educated the petitioner on the importance of participating in the child's care. Thus, the DHS alleged that the petitioner neglected the child due to her mental illnesses, which rendered her incapable of exercising proper parenting skills, and her failure to provide necessary care to the child.

In May 2024, the petitioner underwent a forensic psychological examination of parental fitness, wherein the evaluator explained that she had "no intellectual defects that would impact parenting" and "tends to be in denial somewhat about her mental health issues." The evaluator concluded that the petitioner had a guarded-to-poor prognosis for improved parenting because she

---

[1] The petitioner appears by counsel Jonathan T. O'Dell. The West Virginia Department of Human Services ("DHS") appears by Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Tracy Weese appears as the child's guardian ad litem.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

"did not currently have the parental capacity to care, protect and change in order to provide adequately for her child unless she can commit to work[ing] on identified parenting deficits." The same evaluator also performed a forensic psychological examination of competency which concluded that the petitioner was "competent to proceed with any legal issues related to her parenting and to assist her attorney to work through the court process" with "no significant deficits related to her understanding . . . of her rights and her ability to work with her attorney."

In August 2024, the court held an adjudicatory hearing at which the nurse who interacted with the petitioner when she gave birth testified as to her concerns regarding the petitioner allowing the child's eye mask to slip and potentially obstruct his breathing. Then, the evaluator who performed the above-mentioned forensic psychological examinations testified as to the contents of his reports, noting the petitioner's lack of insight and continuing mental health issues. Next, the petitioner testified that her prior termination was caused by an abusive ex-husband and took no responsibility for the issues for which her rights were terminated. She explained that the court's concerns in the prior proceeding were her lack of housing, mental health issues, and domestic violence between her and her ex-husband. She insisted that she engaged in services and therapy and that she complied with everything the court asked of her in the prior proceeding and was unable to explain why her rights to the other child were terminated, referring to that child's subsequent adoption as "illegal." At the close of the hearing, the court ordered the parties to submit proposed orders. At a status hearing on December 10, 2024, the court advised it would adopt the DHS's proposed order with some edits. In the status hearing order, the court found that "it did not believe [the petitioner] had demonstrated that she had corrected her circumstances, which formed the basis of her involuntary termination . . . to a sibling."

In its adjudicatory order entered on December 30, 2024, the court found that the petitioner acknowledged her current diagnoses of autism and borderline personality disorder and her previous diagnoses of post-traumatic stress disorder, anxiety, and depression yet failed to accept responsibility for and acknowledge the extent of her mental health issues, rendering her unable to safely parent the child. The court noted the petitioner's previous participation in services and ongoing therapy but concluded that she had not adequately corrected or acknowledged the issues that led to her prior termination sufficiently enough to parent a subsequently born child and that she did not "appreciate the level of intervention that she's required to engage in, in order to be able to parent adequately."

On January 31, 2025, the petitioner filed a motion for a post-dispositional improvement period. The same day, the parties convened for a dispositional hearing at which a Child Protective Services worker testified that the DHS recommended termination of the petitioner's rights because of her failure to remedy the circumstances leading to her prior termination and her recent psychological evaluation. In the dispositional order, the court found that the petitioner failed to demonstrate that she was likely to participate in an improvement period, citing to her discharge from adult life skills services, her failure to substantially engage in rehabilitative services, her failure to present any evidence of her participation in rehabilitative services outside of those offered by the DHS, and her continued failure to acknowledge the issues of abuse and neglect for which she was adjudicated. Accordingly, the court concluded that there was no reasonable likelihood that the conditions of abuse or neglect could be substantially corrected in the near future and that termination of the petitioner's rights was necessary for the child's best interests,

2

considering his need for continuity of care. As such, the court terminated the petitioner's parental, custodial, and guardianship rights to the child.[3] It is from this order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred by shifting the burden of proof at adjudication from the DHS to her. The petitioner specifically alleges that the court erred when it found, in the adjudicatory order, that "[the petitioner] has not remedied the problems and conditions which led to her prior involuntary termination."[4] Indeed, "the burden of proof to terminate parental rights demands clear and convincing evidence and that burden remains at all times on the [DHS]." *In re K.V.*, 251 W. Va. 418, 427, 914 S.E.2d 517, 526 (2025). However, we have instructed that

> [w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in [West Virginia Code §§ 49-4-601 through 49-4-610].

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (quoting Syl. Pt. 2, *In the Matter of George Glen B.*, 205 W. Va. 435, 518 S.E.2d 863 (1999)). Here, the court undertook the appropriate inquiry of whether or not the petitioner remedied the mental health issues that led to her prior termination, as required. This does not constitute a burden shifting. Rather, in concluding that the petitioner did not remedy those issues, the court relied upon testimony presented by the DHS's witnesses regarding the petitioner's current behaviors and her recent psychological and competency evaluations. Ultimately, the court determined that there was clear and convincing evidence that the child was neglected, and we decline to disturb its decision.

The petitioner also claims that the circuit court shifted the burden onto her at disposition; again, we disagree. In its dispositional order, the court found that the petitioner "failed to prove that she remedied the problems which led to the prior involuntary termination." Despite the petitioner's assertion, this finding does not shift the evidentiary burden but rather recognizes that the DHS produced evidence of the petitioner's failure to remedy those problems. That evidence included the petitioner's dismissal from services due to her failure to acknowledge any parental deficits and her failure to substantially engage in rehabilitative services. Thus, the court's finding

---

[3] The child's father is deceased. The permanency plan for the child is adoption in the current placement.

[4] The petitioner also argues that several of the circuit court's findings related to her adjudication in other, subsequent orders demonstrate that the court shifted the evidentiary burden onto her. However, for purposes of reviewing her adjudication, we will not consider the court's recitation of its adjudicatory findings in subsequent orders.

3

indicates that the petitioner failed to produce any evidence rebutting the DHS, not that the burden of proof was shifted onto her. Thus, the petitioner is entitled to no relief in this regard.

Next, the petitioner argues that the circuit court erred by proceeding to disposition in the absence of a valid adjudication, as the court's adjudicatory order fails to adjudicate the petitioner of abusing or neglecting the child.[5] Indeed, after the adjudicatory hearing, the court is required to "make a determination based upon the evidence and . . . make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent" and incorporate those findings into its adjudicatory order. W. Va. Code § 49-4-601. Such findings are a "prerequisite to further continuation of the case." Syl. Pt. 6, in part, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). A neglected child is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education." W. Va. Code § 49-1-201. We recently examined a circuit court's failure to provide "detailed factual findings regarding the determination of abuse and neglect" and concluded that the court's verbal findings at the hearing coupled with ample witness testimony and documentary evidence were sufficient to affirm that parent's adjudication and did not substantially disregard or frustrate the applicable authority. *In re R.M.*, --W. Va. at --, 923 S.E.2d at 366. Here, the court's order does not invoke the language contemplated by the statute, but the court's factual findings and the evidence presented support the conclusion that the child was neglected. The court found that the petitioner "lack[ed] the parental capacity to safely parent" the child due to her failure to acknowledge her mental health issues, consistently denied responsibility for the prior termination of her rights, and failed to appreciate the level of intervention necessary for her to gain adequate parenting skills. Moreover, the petitioner testified that her rights to another child were terminated but insisted that she complied with that court's directives and that the child's subsequent adoption was illegal, demonstrating her refusal to take responsibility for that prior termination and leading the court to conclude that those circumstances continued, unabated. These findings establish that the petitioner neglected the child; thus, the court's order does not substantially frustrate or disregard applicable authority, and we decline to disturb the court's decision below.

The petitioner also argues that the circuit court erred by terminating her parental, custodial, and guardianship rights rather than granting her an improvement period. We first note that in order to receive an improvement period, a parent must "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." W. Va. Code § 49-4-610. Furthermore, "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's

_____

[5] The petitioner also asserts that the circuit court lacked subject matter jurisdiction because of its failure to properly adjudicate her. However, the petitioner makes no substantive argument regarding jurisdiction, and we have recently explained that adjudicatory findings are a "statutory prerequisite for the circuit court to proceed to the dispositional phase, not a requirement for establishing or maintaining subject matter jurisdiction." Syl. Pt. 4, in part, *In re R.M.*, -- W. Va. --, 923 S.E.2d 352 (2025). As such, the petitioner is entitled to no relief in regard to her jurisdictional assertions.

4

expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Here, the petitioner failed to acknowledge her parental defects, causing her to be discharged from adult life skills services. The court found that the petitioner failed to accept responsibility for and acknowledge the extent of her mental health issues, rendering her unable to safely parent the child. Based upon these findings, the court concluded that she was not likely to participate in an improvement period and it would be an exercise in futility. We find no abuse of the court's discretion in this decision. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Finally, the petitioner argues that a less restrictive disposition was warranted. However, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). There is no such likelihood when "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d). Here, the petitioner was granted services in a prior proceeding, continually minimized her mental health issues, and insisted that she adequately cared for the child despite evidence to the contrary. The court found that she did not have the capacity to provide for the child and, critically, that she failed to acknowledge the issues of neglect, rendering those issues untreatable. Therefore, the court concluded that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and that termination was in the child's best interests. Accordingly, the petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 11, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

5