# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **P.P.**

**No. 18-1049** (Upshur County 18-JA-01)

**FILED**

**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father C.P.-1, by counsel Brian W. Bailey, appeals the Circuit Court of Upshur County's November 5, 2018, order terminating his parental rights to P.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Hunter D. Simmons, filed a response on behalf of the child, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying him an improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parents have an extensive and egregious history of Child Protective Services ("CPS") intervention dating back over a decade. In 2007, the parents gave birth to their first child together, C.P.-2. Shortly thereafter, petitioner physically abused then-ten-week-old C.P.-2 such that the child suffered two skull fractures, a subdural hematoma, two rib fractures, fingerprint bruising to the forehead and top of the head, and bruising to the back. C.P.-2's injuries were so severe that he required a partial lobotomy to relieve pressure in the skull, leaving him

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because petitioner and a child discussed in this matter share the same initials, we will refer to them as C.P.-1 and C.P.-2, respectively, throughout this memorandum decision.

permanently impaired. The DHHR filed a child abuse and neglect petition against the parents, which ultimately resulted in the involuntary termination of the mother's parental rights. Petitioner voluntarily relinquished his parental rights to C.P.-2, pled guilty to child abuse resulting in bodily injury, and was sentenced to not less than one nor more than five years of incarceration.

Following petitioner's release from incarceration in 2010, he and the mother reunited and had two more children together. The DHHR filed child abuse and neglect petitions against the parents based upon their prior abuse. Petitioner voluntarily relinquished his rights to one of the children in 2011, and his parental rights to the other child were terminated in 2013 after the circuit court found that he failed to acknowledge the abuse perpetrated against C.P.-2 or remedy the circumstances of abuse. Of note, petitioner had three other children from prior relationships and his rights to those children were not terminated as they lived with their respective mothers and had no contact with petitioner.

Petitioner and the mother conceived a fourth child, P.P., who was born in December of 2017. P.P. is the only child at issue on appeal. The DHHR filed the instant child abuse and neglect petition against the parents in January of 2018, alleging aggravated circumstances and their continued failure to remedy the circumstances that resulted in the prior termination of their parental rights. Petitioner waived his preliminary hearing.

In August of 2018, the circuit court held an adjudicatory hearing. Testimony established that the parents' home was clean and appropriate for the child, and that the parents were employed. Further, petitioner appeared concerned about the child, called the DHHR often to inquire about the child's wellbeing, provided care items for the child, and previously completed a domestic violence program. However, during the investigation following P.P.'s birth, petitioner denied responsibility for C.P.-2's injuries and stated that his prior termination of parental rights was the result of having been "railroaded by the State" and that he "didn't do anything wrong." Indeed, petitioner testified that, on the night C.P.-2 received his injuries, petitioner had taken medication that caused grogginess before going to bed. Upon waking up to feed C.P.-2, petitioner, under the effects of the medicine, failed to turn on the light and sat down on a couch while holding the child in the crook of his arm, unintentionally hitting the child's head on the wooden arm of a couch. He failed, however, to explain C.P.-2's broken ribs or fingerprint bruises. Further, in 2016, petitioner was convicted of domestic battery second offense, a lesser included offense to the original charge of domestic battery third offense, in which the mother was the victim. As such, although petitioner completed a domestic violence program following this conviction, it was in no way related to his prior abuse of C.P.-2.

After hearing evidence, the circuit court found that the parents remained untruthful nearly eleven years later regarding the injuries sustained by C.P.-2 and further found that they

> failed to demonstrate that they have remedied the problems which led to the prior involuntary terminations sufficient to parent a subsequent-born child as they both continue to fail to acknowledge the prior abuse and neglect of their child and fail to accept any responsibility for the severe physical injury inflicted upon their son.

Accordingly, the circuit court determined that P.P. had been abused and neglected by her parents due to their failure to correct the conditions that led to the prior termination of their parental rights and adjudicated them as abusing parents.

A dispositional hearing was held in October of 2018. The DHHR recommended termination of the parents' parental rights given their failure to acknowledge the abuse perpetrated against C.P.-2 and their resulting inability to address the conditions of abuse that led to the instant petition's filing. Both parents requested post-adjudicatory improvement periods and testified that they would comply with the terms and conditions of the same. After hearing evidence, the circuit court denied the parents' request for improvement periods and terminated their parental rights. In making its findings, the circuit court stated that the facts that the parents were employed, maintained clean and appropriate housing, and provided for the child were not dispositive issues in this matter. Rather, the issues in the prior abuse and neglect proceedings, and which ultimately led to the instant petition's filing, were domestic violence and the continued denial of severe physical abuse of C.P.-2. The circuit court found that petitioner was convicted of a domestic-violence-related incident as recently as 2016, and further found that the remedial measures argued by the parents, such as domestic violence counseling and related courses, failed to address the issues in this case. Based upon the parents' failure to acknowledge the abuse perpetrated upon C.P.-2, the court opined that they were unable to "remedy a problem that they continue to deny exists." Ultimately, the circuit court determined that there was no reasonable likelihood that the parents could correct the conditions of abuse in the near future and that termination was in the child's best interest. It is from the November 5, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

---

[2]The child was placed in the care of a foster family and the permanency plan is adoption.

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying him an improvement period when he demonstrated that he had corrected the circumstances of abuse that led to the termination of his parental rights in a prior case. In support, petitioner cites to Syllabus Point 4 of *In the Matter of George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999), wherein this Court held that

> [w]hen an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to West Virginia Code § [49-4-605(a)(3)], prior to the lower court's making any disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

While petitioner concedes that the DHHR was required to file the instant petition based upon his previous termination of parental rights to an older child,[3] he argues that the evidence established that he had taken significant steps to remedy the circumstances of abuse that led to that termination. Specifically, petitioner argues that he is much more mature now than he was eleven years ago, that he completed a domestic violence program, that he maintained an appropriate home, that he tended to the needs of P.P., and that he was employed. As such, petitioner "submits that he did everything he could to remedy the problems which existed before" and was improperly denied an improvement period "precisely because they all feared that [petitioner] would successfully complete an improvement period." We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004).

We first note that the circuit court allowed for the development of evidence surrounding petitioner's prior involvement in abuse and neglect proceedings pursuant to *George Glen B.* Contrary to petitioner's argument, his alleged maturity, appropriate housing, and employment do not demonstrate that he was likely to fully participate in an improvement period. Here, the issues

---

[3]Pursuant to West Virginia Code § 49-4-605(a)(3), the DHHR shall file or join in a petition where the parent's parental rights to another child have previously been involuntarily terminated.

giving rise to the child abuse and neglect petitions against petitioner included his severe physical abuse against C.P.-2 and continued refusal to acknowledge or accept responsibility for that incident. During the underlying proceedings on the instant petition, petitioner continued to deny that he abused C.P.-2, despite his conviction and incarceration based upon the same. Indeed, petitioner incredibly testified at the adjudicatory hearing that C.P.-2's extensive injuries were caused by bumping his head against the wooden arm of a couch. We have previously noted that

> [f]ailure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.*, 215 W. Va. at 217, 599 S.E.2d at 640). Because petitioner failed to acknowledge the severe abuse he perpetrated against C.P.-2, the problem of abuse remains untreatable and renders an improvement period an exercise in futility at P.P.'s expense. Therefore, we find no error in the circuit court's decision to deny petitioner an improvement period.

Petitioner next argues that the circuit court erred in terminating his parental rights. According to petitioner, the circuit court erred in focusing on his prior abuse and neglect proceedings rather than the evidence which showed he was gainfully employed, was residing in stable housing, was willing to participate in services, had completed a domestic violence program, and had demonstrated his engagement in the proceedings and willingness to parent the child. He argues that, "[d]espite all of these facts, which essentially were undisputed, the [circuit c]ourt continued to focus like a laser on the first case involving [C.P.-2], and the fact that it did not believe [petitioner's] testimony as to what happened to that child." Petitioner avers the circuit court's termination of his parental rights to P.P. based on his first child abuse and neglect case, without further allegations of abuse, is in direct contradiction to this Court's decision in *In re K.L.*, 233 W. Va. 547, 759 S.E.2d 778 (2014), wherein we noted that child abuse and neglect petitions brought as a result of subsequent-born children must raise allegations of abuse or neglect regarding those children. Having reviewed the record, we find that petitioner's arguments regarding the termination of his parental rights are without merit.[4]

---

[4]Petitioner also argues that the circuit court erred in shifting the burden from the DHHR to petitioner. In support, petitioner again cites to *K.L.*, wherein we reversed and remanded the matter upon finding that the circuit court violated the parent's constitutional due process rights when it shifted the burden to her to show a change in circumstances since the previous termination of her parental rights to another child. *See K.L.*, 233 W. Va. at 553, 759 S.E.2d at 784. Contrary to petitioner's argument, the circuit court below did not impermissibly shift the burden from the DHHR to petitioner. In fact, at the adjudicatory hearing, the DHHR stated "when there's . . . aggravated circumstances . . . the . . . burden does not shift to the Respondent Parents. It remains on the [DHHR], and the [DHHR] is charged with – doing an investigation to determine whether or not there has been a significant change of circumstances." Accordingly, the

(continued . . .)

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* § 49-4-604(c).

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect given his refusal to acknowledge the issues of abuse. We first note that, contrary to petitioner's assertions that the circuit court "held up its subjective disbelief of the explanations provided by [petitioner] during his own testimony about the event from 2007," the record is clear that petitioner severely abused C.P.-2, pled guilty to child abuse resulting in bodily injury, and was incarcerated for that crime. As such, there is no "subjective disbelief" on the part of the circuit court. Rather, petitioner has been found guilty of that crime and the issue in every subsequent abuse and neglect proceeding has revolved around whether he has corrected the circumstances of abuse from that first case.

However, at each subsequent proceeding, petitioner has denied ever harming C.P.-2. Petitioner gave incredible explanations for the injuries and minimized the incident by repeatedly stating "I should have flipped the light on." As such, the record is clear that, despite his conviction and resulting incarceration, petitioner has never accepted responsibility for the injuries inflicted upon C.P.-2. As set forth above, this continued lack of acknowledgement has rendered the circumstances of abuse untreatable.

While petitioner claims that he remedied the circumstances of abuse by maintaining housing and employment, these issues do not demonstrate that there was a reasonable likelihood that he could correct the conditions of abuse. Housing and employment were never at issue in these proceedings. Again, the sole issue arises from petitioner's physical abuse of C.P.-2, which was so severe that he suffered two skull fractures, rib fractures, and extensive bruising. The child is permanently impaired as the result of a partial lobotomy performed to relieve pressure on the brain. Clearly, maintaining employment and a clean home do not show that petitioner has corrected his behavior in regard to this egregious physical abuse. To the extent that petitioner

---

DHHR acknowledged its burden and did not shift it to petitioner. Therefore, this portion of his argument is entirely without merit.

Second, petitioner argues that because his parental rights to two other children (ages fifteen and nine) from different mothers remain intact, his parental rights to P.P. should not have been terminated. However, the record demonstrates petitioner has essentially no contact with those children. Petitioner testified that he had not seen either child in years and further admitted that the nine-year-old's mother would require court intervention before allowing petitioner to visit the child. These situations are far from caring for an infant such as P.P. and provide no support for petitioner's argument that his parental rights to P.P. should not have been terminated.

argues that he completed a domestic violence program, we note that he was forced to complete this program as a result of his criminal conviction in 2016. Further, the director of the program submitted a letter to the circuit court wherein she stated that issues of child abuse and neglect were beyond the scope and intent of the program. As such, his completion of a program entirely unrelated to the issue of abuse against his child does little to support his argument.

Likewise, petitioner's reliance on *K.L.* does not support his argument that his parental rights to P.P. should not have been terminated. In *K.L.*, this Court reversed and remanded the matter based upon the circuit court's improper shifting of the burden to the parent to prove that there had been a change in circumstances since her prior involuntary termination of parental rights to an older sibling. In so doing, we noted that

> [t]he DHHR's petition against the petitioner was based solely on the prior involuntary termination, without further allegations. There must be specific allegations and evidence of abuse or neglect of K.L., *which could include demonstrating that K.L. was abused and/or neglected by showing the petitioner failed to correct the conditions that led to the prior termination of her parental rights and/or that other circumstances exist which would establish abuse and/or neglect.*

*K.L.*, 233 W. Va. at 554, 759 S.E.2d at 785 (emphasis added). Here, contrary to petitioner's assertions, the DHHR did make allegations in addition to the fact that his parental rights to an older child had previously been terminated. The DHHR alleged, and the circuit court found, that P.P. had been abused and neglected because petitioner failed to remedy the circumstances of abuse by refusing to acknowledge the abuse of C.P.-2. Failure to remedy the prior circumstances of abuse is an allegation in addition to a prior termination of parental rights that is clearly contemplated by our findings in *K.L.* Accordingly, petitioner's argument in this regard is without merit.

In sum, we agree that petitioner's failure to acknowledge the abuse of C.P.-2 rendered the circumstances of abuse untreatable, and further demonstrated that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the P.P.'s welfare. Although petitioner appears to be a stable adult in terms of housing and employment, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citing syl. pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). Given petitioner's blatant denial of prior abuse, we find no error in the circuit court's termination of his parental rights.

For these reasons, we find no error in the decision of the circuit court, and its November 5, 2018, order is hereby affirmed. However, we direct the DHHR to file a new petition against petitioner in regard to his two older children who are not at issue on appeal.

Affirmed.

**ISSUED**:  May 24, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison