# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.D.**

**No. 19-0822** (Wood County 19-JA-01)

**FILED**
**April 28, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.B.-2, by counsel Eric K. Powell, appeals the Circuit Court of Wood County's August 23, 2019, order terminating his parental rights to M.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Courtney L. Ahlborn, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed individual replies to both of respondents' briefs. On appeal, petitioner argues that the circuit court erred in adjudicating him, terminating his parental rights, and failing to advise the child she could request post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2019, the DHHR filed an abuse and neglect petition that alleged that emergency personnel were called to the home where the child lived "for a crisis response" involving "a possible overdose." The home in question is that of petitioner's mother, the child's legal guardian.[2] According to petitioner's mother, petitioner "had left the home and came back and appeared to be under the influence of an unknown substance." Because of this, petitioner's mother would not let him in the home. When petitioner's parole officer arrived, petitioner "was handcuffed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The child was not present in the home during the incident in question.

1

and taken into custody." During its investigation, Child Protective Services ("CPS") spoke with petitioner and "observed [him] to be under the influence of an unknown substance," in addition to the fact that he "display[ed] paranoid behaviors and sa[id] incoherent things." During a later discussion with CPS, petitioner admitted that he "relapsed" into substance abuse during the incident in question. The child's guardian further indicated that she witnessed petitioner "f[a]ll over and . . . shak[e]" in her neighbor's backyard. According to the parole officer, petitioner tested positive for methamphetamine and was incarcerated as a result. The DHHR further alleged that petitioner's parental rights to other children were previously terminated "for not complying with the terms and conditions of his improvement period including[] not drug screening as scheduled, continuing to test positive for illegal substances, not starting parenting and adult life skills classes[,] and being dishonest with service providers during the improvement period."

In May of 2019, the circuit court held an adjudicatory hearing. The DHHR presented testimony from the CPS worker who investigated the matter initially. This worker presented testimony consistent with the specific allegations in the petition. The DHHR also introduced into evidence documents from the prior abuse and neglect proceedings that resulted in the termination of petitioner's parental rights to other children. As the DHHR alleged in its petition, these documents reflected that petitioner's prior terminations of parental rights were predicated, at least in part, upon issues involving drugs. Specifically, during a case in 2017, the circuit court found that petitioner's parental rights to another child were terminated because he was "not drug screening as scheduled" and "continu[ed] to test positive for illegal substances." Further, during a proceeding in 2016, the circuit court found that petitioner "exposed the . . . child to unsafe living conditions and inadequate supervision due to the inherent dangers associated with keeping and selling illegal substances in the home where they reside." Ultimately, the circuit court found that petitioner failed to successfully complete improvement periods in his prior cases, admitted during the CPS investigation that he relapsed in his substance abuse, and was observed to be under the influence. As such, the circuit court found that petitioner abused and neglected the child.

In July of 2019, the DHHR recommended the termination of petitioner's parental rights due to the fact that petitioner "suffered from untreated mental health issues, out of control behavior[,] and an ongoing substance abuse issue." That same month, petitioner filed a motion for a post-adjudicatory improvement period.

In August of 2019, the circuit court held a dispositional hearing, during which the DHHR, the child's guardian ad litem, and a court appointed special advocate all recommended termination of petitioner's parental rights. Based upon the evidence, the court found that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future and that the child's welfare required termination, which it ordered.[3] The court further granted post-termination visitation between petitioner and the child "if [the child] requests it and her guardian/custodian agrees that it is in the child's best interests." Upon announcing this ruling, petitioner requested that the child be advised of her right to request visitation, which the circuit court denied. It is from the dispositional order that petitioner appeals.

---

[3]The nonabusing mother's parental rights remain intact. According to the parties, the permanency plan for the children is permanent legal guardianship with the grandmother.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in adjudicating him in regard to M.D. because the child was born prior to the two other children to whom petitioner's parental rights were previously terminated. According to petitioner, this Court's prior interpretations of West Virginia Code § 49-4-605 prohibits the termination of a parent's parental rights to a child who was not born subsequently to the children subject to prior involuntary terminations. We find, however, that this argument is a misstatement of the applicable authorities and entitles petitioner to no relief.

To begin, West Virginia Code § 49-4-605(a)(3), in relevant part, requires that "the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: . . . [i]f . . . the parental rights of the parent to another child have been terminated involuntarily[.]" This statute is entirely silent as to any requirement that the child the DHHR file a petition in regard to, or seek a ruling for, be born *after* the child to whom the parent's parental rights have previously been terminated. The only language petitioner can cite in support of this interpretation is this Court's frequently repeated instruction that "[w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a *subsequently-born child* must, at minimum, be reviewed by a court." Syl. Pt. 2, in part, *In re George Glen B. Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999) (emphasis added). While petitioner cites to a litany of cases wherein the Court has quoted this language approvingly, he provides absolutely no citation to any authority in which the Court has expressly limited the DHHR's ability to file petitions based on prior involuntary terminations because of the order in which the children were born. Petitioner's argument simply ignores the plain reality that the vast majority of cases that involve the application of West Virginia Code § 49-4-605 are the result of a parent whose rights to an *older* child were terminated having given birth to a *younger* child. That, practically, the Court has addressed these cases with language specific to the facts therein in no way limits the application of West Virginia Code § 49-4-605 as petitioner suggests on appeal, and we find that the circuit court was not barred from adjudicating petitioner upon these facts.

3

Petitioner also challenges termination on the grounds that the DHHR decided against including the child in either of the prior petitions that resulted in the termination of his parental rights to his other children. According to petitioner, the DHHR "literally chose not to [include the child as an infant respondent in prior abuse and neglect proceedings] and should now be precluded from basing his termination of parental rights . . . on the prior terminations." Again, petitioner fails to cite to any compelling authority that would preclude the DHHR from initiating proceedings in regard to a child simply because that child was not included in earlier proceedings involving other of petitioner's children. More importantly, his argument ignores the fact that the circumstance surrounding the child at issue changed in a manner that required the termination of his parental rights in order to ensure her safety, stability, and security, while those goals were previously achieved despite leaving petitioner's parental rights intact. As petitioner correctly points out, the DHHR indicated in this case that counsel for the DHHR in petitioner's prior abuse and neglect cases "made the determination not to involve [M.D.] in those proceedings due to the fact that the grandmother had guardianship" of the child. While it may have been the case that the DHHR believed leaving petitioner's parental rights to the child intact while she remained in the guardian's custody was appropriate at that time, the record shows that such a decision was no longer appropriate due to petitioner's actions. As set forth above, this case originated upon petitioner's attempt to enter the guardian's home while under the influence and behaving erratically and incoherently. While it is true that the child was not home at the time, petitioner's conduct only illustrates how his continued substance abuse threatens the child's welfare and required the drastic measure of termination of his parental rights in order to ensure the child's welfare. On appeal, petitioner argues that the act of permitting the child to remain in a temporary guardianship means that he "remedied the problem that led to the prior terminations" by ensuring that the guardian provides for the child's care and "by not placing [her] in any position of harm." This argument, however, clearly ignores the evidence submitted below and only highlights petitioner's failure to understand how his actions constitute conduct that threatens the child's welfare.

In furtherance of his argument that adjudication was improper, petitioner cites to the documents from his prior abuse and neglect proceedings that were admitted into evidence and asserts that the specific allegations from those proceedings do not apply to his conduct in the current matter. Without belaboring petitioner's specific arguments, it is sufficient to point out that the record is clear that petitioner's parental rights to at least one of his other children were terminated because of his issues with drugs. As the circuit court correctly found, the documents from one of petitioner's prior abuse and neglect proceedings established that his parental rights to another child were terminated because he was "not drug screening as scheduled" and "continu[ed] to test positive for illegal substances." While petitioner argues about the specific language cited at various points in the prior cases to assert that the issue in this case is different, such willful obfuscation of the clear issues of abuse and neglect spanning multiple proceedings does not change the fact that each and every one of petitioner's abuse and neglect cases has, in some manner, involved drugs. Further, the fact that his parental rights to at least one of the other children were terminated due to substance abuse means that the circuit court did not err in adjudicating petitioner in the current matter, given that the evidence established that his substance abuse persisted. Petitioner repeatedly asserts that the conduct giving rise to the most recent petition was a relapse and that he was "under the influence of drugs for the first time in eight months." While it may be true that petitioner had, for a period, curbed his substance abuse, the fact remains that the incident giving rise to this petition evidences his failure to remedy the issues that led to the prior involuntary

termination of parental rights to other children. We are further not persuaded by petitioner's assertion that this incident was so isolated that it could not constitute abuse and or neglect of the child.

We have previously held as follows:

[w]here there has been a prior involuntary termination of parental rights to a sibling, the issue of whether the parent has remedied the problems which led to the prior involuntary termination sufficient to parent a subsequently-born child must, at minimum, be reviewed by a court, and such review should be initiated on a petition pursuant to the provisions governing the procedure in cases of child neglect or abuse set forth in West Virginia Code [§§ 49-4-601 through 49-4-610]. Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in West Virginia Code [§ 49-4-605(a)] is present.

*In re Kyiah P.*, 213 W. Va. 424, 427, 582 S.E.2d 871, 874 (2003) (citation omitted). Here, the record is clear that petitioner had not remedied the conditions of abuse and neglect that led to the prior involuntary terminations of his parental rights. Given that petitioner's rights were previously terminated because of his continued substance abuse, evidence that he was abusing methamphetamine clearly established that he did not remedy the problem. Further, it is clear that petitioner's continued substance abuse precluded him from sufficiently parenting the child, and the fact that the child resided in a legal guardianship with petitioner's mother does not alter this determination. In short, that petitioner was not required to parent the child because of the legal guardianship does not change the fact that petitioner was clearly unable to do so. More importantly, however, is the fact that petitioner's continued substance abuse and attempts to enter the child's home while under the influence and against the guardian's wishes constitutes, at a minimum, neglect of the child, given that this conduct clearly threatens the child's welfare. *See* W. Va. Code § 49-1-201 (defining "neglected child," in relevant part, as one "[w]hose physical or mental health is . . . *threatened* by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education"). Indeed, petitioner even acknowledges that he is unable to properly parent the child by arguing that his transfer of custody of the child to the grandmother removed the child from "any position of harm" that would have been present in his care. Given the "reduced . . . threshold of evidence necessary for termination" because of the prior terminations of petitioner's parental rights to other children, we find no error in the circuit court adjudicating petitioner or in proceeding to termination following that adjudication. *Kyiah P.*, 213 W. Va. at 427, 582 S.E.2d at 874.

Similarly, we find no error in the circuit court's termination of petitioner's parental rights. On appeal, petitioner challenges termination on the grounds that the circuit court's finding that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future is unsupported by his isolated relapse. We find, however, that this argument ignores the broad issues with drugs petitioner has exhibited across multiple abuse and neglect proceedings over several years. Indeed, since at least 2016, circuit courts have made findings regarding petitioner's issues with drugs, which continue to reoccur across multiple abuse and

neglect petitions. While it may be true that petitioner's drug use in the current case was isolated, the fact remains that this is an issue that has served as the basis for the prior termination of his parental rights to at least one other child. Pursuant to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." It could not be more clear that petitioner has demonstrated an inadequate capacity to solve the issues of abuse and neglect, given the repeated proceedings necessitated by his continued conduct. Based on the ongoing nature of petitioner's substance abuse, we find no error in the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect. Further, petitioner argues that it was not necessary for the child's welfare to terminate his parental rights because he made the "responsible choice" to leave the child with her legal guardian. We disagree and note that this case was initiated because of petitioner's attempt to enter the guardian's home while under the influence and behaving erratically. As such, it is clear that the additional step of termination of petitioner's parental rights to the child was necessary to ensure her stability, safety, and permanence in the guardian's custody.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in refusing his request to advise the child of her right to request visitation. During the dispositional hearing, the circuit court was clear that it did not want the child to "feel pressured" to request visitation if she did not want to and, thus, denied petitioner's request. Instead, the circuit court ruled that the issue of visitation would be "le[ft] . . . alone unless she brings it up." On appeal, petitioner argues that it is "internally contradictory" to rule that the child could be of appropriate maturity to make a decision regarding visitation but not to let her know she has that right. As such, petitioner argues that the circuit court's award of visitation is a "futile gesture." According to petitioner, the other parties' agreement to this ruling "is a tacit admission that they all believe that there is a bond" between petitioner and the child and that post-termination visitation would be in the child's best interest. We do not agree.

On the contrary, the record shows that the circuit court and the parties specifically indicated that the child *was not* of a sufficient age to make a request as to visitation. According to the record, during this conversation, the DHHR indicated that the child was seven and that it "believe[d] she's quite young to have that conversation." The circuit court concurred, ruling that "[i]f she was older,

I wouldn't have . . . a problem with that, but being a young child she may feel pressured that she needs to ask for that." As this Court has held,

> "[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). Simply put, petitioner has failed to cite to any evidence that a close emotional bond with the child existed or that continued visitation or contact would not be detrimental to the child's wellbeing. By leaving the determination of whether visitation would be in the child's best interest up to the child's guardian, if the child were to request it, the circuit court necessarily refrained from making the determinations necessary to grant petitioner continued visitation. Given that the record does not support continued visitation, we find no error in the circuit court's refusal to inform the child that she could request visitation, especially in light of the fact that the circuit court and the DHHR expressly indicated that the child was not of appropriate maturity to discuss the issue.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 23, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 28, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7