STATE OF WEST VIRGINIA

*In re* **S.P.**

**No. 20-0017** (Randolph County 19-JA-76)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.W., by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's December 12, 2019, order terminating her parental rights to S.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Heather M. Weese, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner abused controlled substances while pregnant with S.P. and tested positive after the birth of S.P. in July of 2019 for her prescribed buprenorphine, as well as unprescribed tetrahydrocannabinol ("THC") and benzodiazepines. S.P. was born three-months premature and required four to six weeks of hospitalization following her birth. According to the DHHR, petitioner also tested positive for methamphetamine, buprenorphine, and THC in June of 2019. Further, the DHHR alleged that petitioner's parental rights to three other children were previously terminated. In one prior abuse and neglect proceeding, filed in 2012, the DHHR alleged that petitioner struggled with substance abuse disorder, domestic violence in her relationships, and deplorable housing conditions. Ultimately, petitioner relinquished her parental rights to an older child after she failed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

to complete services in that case. Again, in 2016, the DHHR alleged that petitioner's ability to parent was negatively affected by her substance abuse and that she exposed two older children to deplorable housing. Following that second petition, petitioner failed to participate in the proceedings and her parental rights to those children were involuntarily terminated.

The circuit court convened for an adjudicatory hearing in August of 2019, and petitioner stipulated to the allegations that she tested positive for controlled substances in July of 2019. Petitioner also stipulated to her past substance abuse history and prior terminations of her parental rights. Upon these stipulations, the circuit court adjudicated petitioner as an abusing parent as to S.P. Thereafter, petitioner moved for a post-adjudicatory improvement period, while the DHHR moved to terminate her parental rights.

In December of 2019, the circuit court held the final dispositional hearing. Petitioner testified regarding parenting classes, counseling, and drug screening that she organized and participated in during the proceedings. The DHHR opposed petitioner's motion for a post-adjudicatory improvement period and relied on evidence presented at prior hearings in support of its motion to terminate petitioner's parental rights. Petitioner was drug screened twice on the day of the dispositional hearing and tested positive for her prescription medications. However, the circuit court stated that "her speech has been very difficult to understand in testimony today. It appears to the [circuit c]ourt today that [petitioner], based on her speech and demeaner, is impaired from her prescription medications." Ultimately, the circuit court found that "there ha[d] not been any change of circumstances between the 2012, 2016 and 2019 abuse and neglect cases." The circuit court noted a recent criminal case wherein petitioner was unwilling to participate in community corrections and drug treatment as an alternative sentence to incarceration. The court further noted petitioner's June of 2019 drug screen that was positive for methamphetamine. Moreover, the circuit court found that petitioner made "little to no effort until the last month to participate in services" and, as such, found that she did not present clear and convincing evidence that she would fully participate in an improvement period. Finally, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was necessary for the child's welfare to terminate petitioner's parental rights. Accordingly, the circuit court terminated petitioner's parental rights by its December 12, 2019, order. Petitioner now appeals that order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left

---

[2]According to the parties, the child's father is currently participating in services. The permanency plan for the child is reunification with her father with a concurrent plan of adoption by her current foster placement.

2

with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. She avers that her testimony demonstrated, by clear and convincing evidence, that she was likely to fully participate in an improvement period. Petitioner testified that she signed up for counseling, completed a parenting class and enrolled in another, provided negative drug screens, and took her medications as prescribed. However, upon our review of the record, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that a circuit court may grant a parent a post-adjudicatory improvement period when she "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). "Additionally, if a parent is unable to demonstrate an ability to correct the underlying conditions of abuse and/or neglect in the near future, termination of parental rights may proceed without the utilization of an improvement period." *In re Charity H.*, 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. As sole evidence in support of her motion, petitioner testified that she was participating in services. However, her manner of speech and demeanor led the circuit court to conclude petitioner was impaired during that testimony. The manner of this testimony certainly affected petitioner's credibility, and "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Though petitioner argues that the DHHR relied solely on her prior terminations of parental rights, the circumstances of those terminations include petitioner's failure to complete an improvement period and to fully participate in the abuse and neglect proceedings, which are compelling reasons to find that petitioner would not fully participate in an improvement period in the present case. Accordingly, we find no abuse of discretion in the circuit court's denial of petitioner's motion for an improvement period.

Finally, even though petitioner asserts the circuit court erred in terminating her rights, she offers no argument to contradict the circuit court's decision, choosing instead to focus entirely on the circuit court's denial of her improvement period. Nevertheless, we consider the circuit court's termination of her parental rights and find no error.

When an abuse and neglect petition is brought based solely upon a previous involuntary termination of parental rights to a sibling pursuant to [W. Va. Code § 49-4-605], prior to the lower court's making any disposition regarding the petition,

it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s).

Syl. Pt. 4, *In re George Glen B., Jr.*, 205 W. Va. 435, 437, 518 S.E.2d 863, 865 (1999). "Although the requirement that such a petition be filed does not mandate termination in all circumstances, the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in [W. Va. Code § 49-4-605] is present." *Id*, at 437, 518 S.E.2d at 865, syl. pt. 2, in part. In this case, it is clear that the conditions that led to the prior terminations of petitioner's parental rights were unchanged, as found by the circuit court. Petitioner continued to abuse controlled substances up until the birth of S.P., as evidenced by her positive drug screen in June of 2019 while pregnant and her positive drug screen upon the child's birth. In contrast, petitioner offered no evidence that she had attempted to remedy her substance abuse problems. In fact, the circuit court found that petitioner was offered drug treatment during an unrelated criminal proceeding, but chose to forego treatment. Based on this evidence, the circuit court's finding that petitioner experienced no change in circumstances is fully supported by the record and further supports the finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future.

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)][3] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based upon these findings, we find no error in the circuit court's decision to terminate petitioner's parental rights.

Lastly, we note that the child's father is continuing to participate in services and a final disposition for the child has not yet been reached. As such, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.

4

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 to find permanent placement for a child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6) (2019)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 12, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison