# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **L.B.**

**No. 20-0203** (Fayette County 19-JA-109)

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother W.B., by counsel Nancy S. Fraley, appeals the Circuit Court of Fayette County's January 23, 2020, order terminating her parental rights to L.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Jamison T. Conrad, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motions for a new psychological evaluation and a post-adjudicatory improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In August of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner abused alcohol during her pregnancy with L.B. and that the child was born exhibiting symptoms of fetal alcohol syndrome. Specifically, the DHHR alleged that the child was transferred to another medical facility due to low oxygen levels and inability to regulate her body temperature or feed properly. The DHHR further alleged there were aggravating circumstances based upon the prior involuntary termination of petitioner's parental rights to four older children. Later that month, the DHHR amended the petition to include L.B.'s father, and both parents later waived their preliminary hearings.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

The circuit court held an adjudicatory hearing in October of 2019, during which the parents stipulated to the allegations contained in the petition. Additionally, petitioner admitted that her parental rights to four older children were previously involuntarily terminated. The court then granted petitioner one supervised visit with L.B. pending a negative drug and alcohol screen. The DHHR later filed a report with the circuit court indicating that petitioner's visit with the child went well but that due to her prior involuntary terminations of parental rights, it was still opposing any improvement period. The next month, the circuit court held a hearing wherein petitioner moved for a post-adjudicatory improvement period. In support of her motion, petitioner testified that she had been complying with services, passing drug screens, and cooperating with service providers. Further, petitioner testified that she had tubal ligation after L.B.'s birth, meaning the child would most likely be her last and that she was, therefore, motivated to retain custody and parent the child. The DHHR and guardian opposed the motion, citing petitioner's prior involuntary terminations of parental rights. The court ultimately denied the motion because it found petitioner was unlikely to successfully complete an improvement period.

In December of 2019, the circuit court held a hearing where petitioner renewed her motion for a post-adjudicatory improvement period. The court denied the motion. Petitioner also moved for a psychological evaluation, arguing that she had not undergone an evaluation in the current case. In support of her motion, petitioner argued that her most recent evaluation was from a prior abuse and neglect case and, in any event, was now two years old. However, the circuit court reviewed prior psychological evaluations from 2015 and 2017, which reached similar conclusions regarding petitioner's ongoing substance abuse issue and inability to properly parent her children. As such, the court denied petitioner's motion and found that the psychological reports were "very consistent generally as to . . . her mental makeup."

The next month, the circuit court held a final dispositional hearing wherein the DHHR and guardian moved for termination of petitioner's parental rights. At the hearing, counsel for the DHHR presented evidence that petitioner had prior involuntary terminations of her parental rights and confirmed that L.B. was born with fetal alcohol syndrome. Further, counsel cited petitioner's multiple prior psychological evaluations and "ongoing alcohol abuse" in support of termination. Petitioner disputed that characterization when she testified that she had not consumed alcohol since 2012—upon the birth of her first child—and that she had not done anything wrong to merit the removal of L.B. Petitioner testified further that her own mother could verify she had not consumed any alcohol during her pregnancy with L.B. and that she deserved a chance to parent the child. Finally, petitioner testified that she had undergone tubal ligation and brought a mechanical doll with her to court "to prove to the [DHHR] that I can be a mother." However, on cross examination, petitioner admitted that her parental rights to four other children had been terminated between 2012 and 2017 as a result of her alcohol abuse. Under questioning as to why L.B. had been diagnosed with fetal alcohol syndrome if she had not consumed alcohol since 2012, petitioner testified she had "no idea." Under further questioning, petitioner denied that she was intoxicated when she had a blood alcohol level of .021 while eight months pregnant with another child in 2017. Additionally, petitioner could not recall some pertinent information from her prior involuntary terminations, including the names of the children. Petitioner also admitted that she had an improvement period granted and revoked in another case in 2017. Finally, petitioner's mother testified that she could not verify whether petitioner had consumed alcohol during her pregnancy with L.B., as she was not with petitioner.

At the conclusion of the January of 2020 dispositional hearing, the circuit court stated, "I don't know what [petitioner] thought by testifying in this matter and having her mother testify, but the only thing that it's done to the court is solidify my opinion that she is not able to take care of a young child." Further, the circuit court found that petitioner had four prior involuntary terminations of her parental rights and had undergone prior psychological evaluations. The prior evaluations, conducted between 2012 and 2017, all concluded that petitioner had a mild intellectual disability which impaired her ability to parent. Finally, the court found that L.B. was suffering from fetal alcohol syndrome due to petitioner's alcohol abuse. Ultimately, the circuit court denied petitioner's motion for an improvement period, finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on January 23, 2020. It is from this dispositional order that she now appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for a new psychological evaluation to be performed prior to the final dispositional hearing. According to petitioner, her most recent psychological evaluation was completed two years prior to the dispositional hearing in the instant abuse and neglect action and "comparing the information from her previous abuse and neglect actions with the level of compliance she had in this action it does seem probable that improvement could have been documented with a new evaluation." We find this argument to be without merit.

West Virginia Code § 49-4-603(a)(1) provides as follows:

---

[2]The father voluntarily relinquished his parental rights. According to the DHHR, the permanency plan for the child is adoption by her foster family.

At any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony from the expert, subject to cross-examination and the rules of evidence.

Here, it is undisputed that petitioner has received multiple psychological evaluations in prior abuse and neglect proceedings, having undergone three separate evaluations in the years leading up to the current matter. Upon examination of the reports prior to the dispositional hearing in this case, the circuit court found that an evaluation conducted in November of 2015 reported that petitioner was functioning in the mild intellectual disability range which "ma[de] her ability to care for her children as well as participate in an insight oriented remediation plan limited and somewhat precarious." The 2015 report also detailed that the "result is exactly the same" as an evaluation from 2013. Further, petitioner's most recent evaluation, conducted in April of 2017, explained that petitioner received government assistance for a learning disability. The report went on to detail that her IQ scores fall "between the lower extreme and below average or borderline ranges of intellectual functioning." Finally, the most recent evaluation concluded that petitioner was "unlikely [to] . . . be able to develop insight into her issues and develop a coherent strategy for addressing them in a reasonable timeframe" and that the "prognosis for the reliable attainment of minimally adequate parenting . . . is currently assessed to be poor."

Despite this, petitioner contends that her prior psychological evaluations failed to provide the circuit court with accurate information regarding her ability to parent because they did not account for her "level of compliance" with the DHHR in these proceedings. Petitioner points to her tubal ligation after the birth of L.B., which would likely prevent the birth of future children. Petitioner argues this shows she is in a better frame of mind to parent the child and that she would take a new psychological exam "seriously." However, as the DHHR notes, none of the prior psychological evaluations reference petitioner's failure to cooperate with services. Indeed, the prior evaluations noted that petitioner was cooperative. While the evaluations all noted petitioner's compliance with services, the prior evaluations also provided the same diagnosis on her ability to parent. The evaluations documented that petitioner is in the mild intellectual disability range and has a poor prognosis of being able to adequately care for a child.

Petitioner also alleges that the circuit court erred in failing to adhere to the requirements of *Maranda T.*, which provides as follows:

Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement.

Syl. Pt. 4, *In re Maranda T.*, 223 W. Va. 512, 678 S.E.2d 18 (2009) (citation omitted). According to petitioner, the DHHR could only make a "thorough effort to determine whether the parent(s)

4

can adequately care for the children with intensive long-term assistance," as required by the *Miranda T.* Court, via a new psychological evaluation. However, *Miranda T.* and West Virginia Code § 49-4-603(a)(1) do not mandate that a parent with limited functioning necessarily undergo a new psychological evaluation to make the requisite determination; this is clear when considering that "[t]he determination of whether the parents can function with such assistance *should be made as soon as possible* in order to maximize the child(ren)'s chances for a permanent placement." *Maranda T.*, 223 W. Va. at 512, 678 S.E.2d at 18 (emphasis added).

Petitioner's position would require that a new psychological evaluation be conducted in every case and would negate the circuit court's inherent discretion in ordering such evaluations. In this case, the circuit court had three previous psychological evaluations to evaluate petitioner's capacity for parental improvement given her intellectual functioning, motivation to improve, and acknowledgement of the issues. Based on our review of the record, we find that the circuit court complied with the requirements of *Maranda T.* and determined that petitioner could not care for the child with long-term services. Accordingly, we find no error in the circuit court's denial of petitioner's motion for a new psychological evaluation.

Petitioner next argues that the circuit court erred in denying her a post-adjudicatory improvement period. According to petitioner, the circuit court gave improper weight to the results of her prior psychological evaluations, which did not account for her progress in complying with services in this case. Further, petitioner again points to her tubal ligation and her one successful visit with the child. She argues that her "actions throughout the case [demonstrate] that she was motivated to perform any tasks put before her to have a relationship with her daughter." Petitioner asserts that she showed sufficient progress and improvement to warrant the granting of an improvement period. Upon our review, we find that petitioner is entitled to no relief.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). Finally, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). While petitioner avers that she made some improvements, the record shows that petitioner failed to correct the conditions of abuse and neglect that led to the prior involuntary terminations of her parental rights to older children. Specifically, petitioner continued to abuse alcohol during her pregnancy with L.B. despite knowing the risks from her prior pregnancies. Further, petitioner's ability to care for the child is in question because she could not care for her other children and her prior psychological evaluations all indicated that she was unable to care for children. We also note that this is petitioner's fifth child subjected to a child abuse and neglect proceeding, yet petitioner has failed to make any substantial changes to her circumstances despite the DHHR's numerous prior interventions and services. Finally, while petitioner argues she was not given an improvement period in these proceedings, she does not dispute she was granted an improvement period in a prior child abuse and neglect proceeding that was revoked before her parental rights were ultimately terminated. Therefore, it is clear that petitioner was

unlikely to fully participate in an improvement period, and we find no error in the circuit court's decision.

Finally, petitioner argues that the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future was not supported by the evidence. She further argues that the circuit court should have imposed a less-restrictive dispositional alternative to the termination of her parental rights. We disagree.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. "No reasonable likelihood that conditions of neglect or abuse can be substantially corrected" means that "the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." *Id.* at § 49-4-604(d). We also acknowledge that "the legislature has reduced the minimum threshold of evidence necessary for termination [of parental rights] where one of the factors outlined in [W. Va. Code § 49-4-605] is present," such as the involuntary termination of parental rights to the sibling of a child named in the petition. Syl. Pt. 2, in part, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999). However, "prior to the [circuit] court's . . . disposition regarding the petition, it must allow the development of evidence surrounding the prior involuntary termination(s) and what actions, if any, the parent(s) have taken to remedy the circumstances which led to the prior termination(s)." *Id.* at 437, 518 S.E.2d at 865, syl pt. 4, in part.

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect given that this was her fifth child involved in a child abuse and neglect proceeding, Further, petitioner suffered from the same mild intellectual disability and engaged in the same substance abuse that were the subject of prior child abuse and neglect petitions with other children. Despite the DHHR's extensive services provided to petitioner in previous cases, there is no indication that petitioner has made any substantial improvements or was willing or able to make changes to her abusive and/or neglectful behavior in the future. As such, the evidence supports the circuit court's conclusion that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Lastly, we find that the termination of petitioner's parental rights was necessary for the child's welfare, given petitioner's failure to remedy the chronic conditions at issue that have resulted in the termination of her parental rights to four older children.

To the extent petitioner claims that she should have been granted a less-restrictive disposition, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Because the circuit court properly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future, a less-restrictive dispositional alternative was not warranted.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 23, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:
Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison