STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**

**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.S.**

**No. 20-0876** (Cabell County 20-JA-1)

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel Glen D. Conway, appeals the Circuit Court of Cabell County's September 25, 2020, order terminating her parental rights to K.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison K. Huson, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period, finding that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future, and in basing the termination of her parental rights upon her financial circumstances.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2020, the DHHR filed a child abuse and neglect petition alleging that petitioner abused controlled substances while pregnant with K.S., and the child showed signs of neonatal abstinence syndrome upon birth. The DHHR alleged that petitioner admitted to a long history of substance abuse, beginning at age twelve, and continuing through pregnancy. She admitted to a current addiction to heroin and methamphetamine and that she had used substances the day she gave birth to K.S. Petitioner also admitted that she was a prostitute and that she did not always protect herself from sexually transmitted diseases or unintended pregnancy. As a result, petitioner was unsure who the father of the child was, and K.S. had contracted congenital syphilis

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

at birth and required a feeding tube. Newborn K.S. remained in the neonatal intensive care unit ("NICU"). Finally, the DHHR alleged that petitioner was a respondent of a prior child abuse and neglect petition in 2015, wherein her parental rights to K.S.'s sibling were terminated after she failed to participate in an improvement period or otherwise remedy her drug addiction.

The parties convened for a preliminary hearing, which petitioner waived. Counsel for the DHHR advised that petitioner had an active warrant out for her arrest for failing to appear to answer for charges of possession with intent to deliver, which was filed in June of 2017. Petitioner was taken into custody at the conclusion of the hearing.

Petitioner stipulated to the allegations of abuse and neglect in February of 2020, and the circuit court adjudicated her as an abusing parent. Petitioner moved for a post-adjudicatory improvement period, and the circuit court held that motion in abeyance, citing the aggravating circumstance of petitioner's prior termination of parental rights. Further, per a report of the DHHR, K.S. had been released from the NICU into a foster home. The child required physical and occupational therapy and treatment from a neurologist due to a deformity of her foot and leg. The DHHR reported that the child may need a referral to Cincinnati Children's Hospital for a second opinion as to treatment.

The subsequent dispositional hearing was delayed due to the COVID-19 pandemic and resulting judicial emergency. Per a DHHR report, petitioner was released from jail sometime in March of 2020 and began home confinement in a local sober living home. Petitioner submitted two samples for drug screening on March 6, 2020, and March 10, 2020, but then ceased to comply. On March 26, 2020, petitioner was arrested and admitted to using methamphetamine, which violated the terms of her home confinement. Petitioner was reincarcerated and removed from her sober living program. The DHHR reported that it had no contact with petitioner until May 18, 2020, when it learned that petitioner had been released from incarceration sometime in April of 2020 and had entered into a second sober living home. Following that contact, petitioner submitted a negative drug screen result in June of 2020. Finally, the DHHR reported that K.S. continued to receive physical and occupational therapy and follow-up appointments with a specialist in Cincinnati, Ohio.

The circuit court held a status hearing in June of 2020, and petitioner renewed her motion for a post-adjudicatory improvement period. Respondents objected, citing the aggravated circumstances and petitioner's pending criminal proceedings related to the June of 2017 warrant, which had been set for a July of 2020 status hearing. The circuit court deferred ruling on petitioner's motion.

In August of 2020, the circuit court held a dispositional hearing and heard petitioner's testimony related to her motion for an improvement period. During her testimony, petitioner stated that she was unaware of the prior abuse and neglect proceedings and did not participate in those proceedings. The DHHR's report indicated that petitioner had "very minimal contact" with its representative. However, the parties attended a multidisciplinary treatment team ("MDT") meeting and the DHHR expressed the terms of an improvement period, which included obtaining stable housing, "intensive drug treatment with the preference of [the treatment] being inpatient," and obtaining stable employment. Although petitioner had been participating in random drug screening

and testing negative for controlled substances, she refused drug treatment other than what she was provided at the sober living home, where she was "completing the minimum that [was] required for her to reside there." The DHHR asserted that petitioner did not understand her "substantial drug problem" and did not believe she needed to treat that problem. The DHHR also reported that K.S. would be undergoing a magnetic resonance imaging scan to diagnosis a potential neurological condition, which was potentially caused by an in-utero stroke related to petitioner's substance abuse while pregnant with the child. The circuit court found that additional evidence was needed prior to issuing a ruling on petitioner's motion, particularly in regard to her prior abuse and neglect proceeding in Wayne County, West Virginia.

The circuit court held the final dispositional hearing in September of 2020. The DHHR worker testified regarding petitioner's prior abuse and neglect proceeding. She stated that the allegations included substance abuse and medical neglect due to her failure to take K.S.'s sibling to a doctor for over twelve months. The worker also testified that petitioner attended three of the five hearings in her prior abuse and neglect proceeding, missing the last two dispositional hearings, including the hearing during which her parental rights were terminated in 2016. Regarding petitioner's current progress, the DHHR worker testified that petitioner informed the worker that she would enroll in an intensive outpatient program after the hearing in August of 2020. Petitioner continued to test negative for controlled substances, continued to participate in counseling, and continued to reside in the sober living home. Petitioner maintained gainful employment as well. Nevertheless, the worker testified that the DHHR had concerns as to whether petitioner would be able to meet the medical needs for K.S. and remain sober to appropriately parent the child.

Ultimately, the circuit court found that petitioner failed to prove by clear and convincing evidence that she could fully participate in an improvement period and denied her motion. In doing so, the circuit court expressed great concern that petitioner could provide the necessary medical care for K.S. The circuit court further found that petitioner had not demonstrated that she had changed the circumstances of abuse and neglect from her prior case. Accordingly, the circuit court terminated petitioner's parental rights by its September 25, 2020, order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided

---

[2]Paternity of K.S. was not established below. The circuit court terminated the rights of K.S.'s unknown father, citing his abandonment and failure to support the child. According to the parties, the permanency plan for the child is adoption in her current foster placement.

the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. She asserts that the DHHR worker testified that petitioner had made substantial efforts to rehabilitate herself during the proceedings and that she had tested negative for controlled substance for five months prior to the dispositional hearing. Further, petitioner was attending visitation with the child, participating in counseling, and maintained gainful employment. According to petitioner, an improvement period may only be denied if the circuit court finds "compelling circumstances" to justify the denial. Upon our review, petitioner is entitled to no relief.

Initially, we note that petitioner's reliance on the "compelling circumstances" standard for denying an improvement period is misplaced. This standard was "based upon language in a former version of [West Virginia Code § 49-4-610], prior to the 1996 amendments, which stated that a court was to provide an improvement period unless compelling circumstances indicated otherwise." *In re Charity H.*, 215 W. Va. 208, 216 n.11, 599 S.E.2d 631, 639 n.11 (2004). However, "[w]ith the deletion of such language from the statute, the compelling circumstance concept is no longer relevant to this Court's investigation." *Id.* The current statute requires that the parent "demonstrate[], by clear and convincing evidence, that [she is] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Further,

> [w]here an abuse and neglect petition is filed based on prior involuntary termination(s) of parental rights to a sibling, if such prior involuntary termination(s) involved neglect or non-aggravated abuse, the parent(s) may meet the statutory standard for receiving an improvement period with appropriate conditions, and the court may direct the Department of Health and Human Resources to make reasonable efforts to reunify the parent(s) and child. Under these circumstances, the court should give due consideration to the types of remedial measures in which the parent(s) participated or are currently participating and whether the circumstances leading to the prior involuntary termination(s) have been remedied.

Syl. Pt. 5, *In re George Glen B., Jr.*, 205 W. Va. 435, 518 S.E.2d 863 (1999).

In this case, petitioner failed to demonstrate that she was likely to fully participate in a post-adjudicatory improvement period. Although petitioner participated in several measures to remedy the prior conditions of abuse and neglect, she was resistant to the treatment necessary to adequately address her substance abuse. As determined at the July of 2020 MDT meeting, petitioner's family case plan required some form of intensive substance abuse counseling, which was a reasonable term considering petitioner's substance abuse history and her relapse to substance abuse during these proceedings in March of 2020. However, petitioner was resistant to this

treatment and insisted that the sober living facility program was sufficient. Additionally, while the evidence showed that petitioner attempted to remedy her substance abuse, there was no evidence presented that she had participated in any remedial measures to remedy the medical neglect of K.S.'s sibling, which was one of the conditions that led to her prior termination. The lack of any remedial measures of this circumstance is especially concerning given K.S.'s various ailments that required routine appointments with specialists. Finally, the circuit court heard evidence that petitioner participated in her prior abuse and neglect proceeding, but then later abandoned those proceedings and failed to attend the final hearings. This Court has held that

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Upon the foregoing, we find the circuit court did not abuse its discretion in denying petitioner's improvement period. Nine months after the removal of K.S., petitioner had not shown a willingness to fully participate in the terms of an improvement period and had taken no action to remediate the conditions of past medical neglect of K.S.'s sibling. We find no error.

We also find the circuit court did not err in terminating petitioner's parental rights to K.S. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Further, "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d). Finally, "the legislature has reduced the minimum threshold of evidence necessary for termination where one of the factors outlined in [W. Va. Code § 49-4-605(a)] is present."[3] *George Glen B., Jr.*, 205 W. Va. at 437, 518 S.E.2d at 865, syl. pt. 2, in part. Such a factor is present here, i.e., petitioner's parental rights to another child have been terminated involuntarily.

Here, the record supports the requisite finding that there was no reasonable likelihood that petitioner could correct the conditions of neglect or abuse in the near future. As mentioned, petitioner failed to remedy the circumstances of abuse and neglect that were present in her prior case. The evidence illustrates petitioner's extensive substance abuse history, beginning at age twelve, and continuing through the birth of her two children. Although petitioner experienced a

---

[3]West Virginia Code § 49-4-605(a)(3) provides, in relevant part, "the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights . . . [i]f . . . the parental rights of the parent to another child have been terminated involuntarily."

period of sobriety during these proceedings and appeared, at least, to have temporarily ceased her drug abuse, she also relapsed into substance abuse during these proceedings while participating in her initial sober living program. Despite her relapse and continued struggle with substance abuse, she resisted intensive substance abuse treatment, which was a recommended term of her family case plan following the MDT process. Furthermore, there was no evidence presented that petitioner had remediated the conditions of prior medical neglect of K.S.'s sibling. Thus, K.S., a child with very specific medical needs, could be subjected to the same neglect as her sibling while in petitioner's care. We find this evidence fully supports a finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that it was necessary for K.S.'s welfare to terminate petitioner's parental rights.

Petitioner argues that the circuit court improperly considered her financial circumstances in terminating her parental rights. She emphasizes the circuit court's open consideration of K.S.'s severe medical needs in conjunction with petitioner's current employment and potential difficulties that would arise in meeting those needs.[4] We note, however, that the circuit court's consideration was immediately redirected by both petitioner and the guardian. The circuit court later completely agreed with the guardian's recitation of facts and conclusions, during which the guardian refuted the idea that petitioner's economic circumstances would be an undue hinderance. The guardian detailed petitioner's failure to remedy the conditions of her prior termination of parental rights, petitioner's relapse to methamphetamine during these proceedings, and her resistance to an intensive substance abuse treatment. The guardian concluded that petitioner had failed to meet the expectations set forth during the MDT meeting and that it was in K.S.'s best interests to terminate her parental rights. Therefore, we find that the circuit did not base its termination of petitioner's parental rights upon her financial circumstances, and we find no error in the findings of fact and conclusions of law that support the circuit court's ultimate decision.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 25, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

---

[4]The quoted section follows:

[T]his child has severe medical needs. And if I put the child eventually back with [petitioner], that's going to put a great strain upon her to - - I don't - - I don't think there's any way she could take care of this child medically. She's probably going to work the rest of her life for basically minimum wage jobs. And she can't take off from those jobs and go to these different hospitals and do these things like this child needs. There's – nobody's going to employ her like that- the type of work she does[.]

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton